UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES,<br><br>v.<br><br>ELIU LORENZANA-CORDON,<br><br>Defendants. | Criminal Action No. 03-331-13 (CKK) |

MEMORANDUM OPINION
(August 27, 2015)

On April 2, 2009, a federal grand jury returned an indictment charging Defendant Eliu Elixander Lorenzana-Cordon ("Defendant") with conspiracy to import over five kilograms of cocaine into the United States in violation of 21 U.S.C. § 959, 960, and 963. The indictment also carries a criminal forfeiture allegation pursuant to 21 U.S.C. §§ 853 and 970. Defendant remained a fugitive for approximately two-and-a-half years in Guatemala and was arrested on this indictment in Guatemala on November 8, 2011. After fighting extradition for approximately three-and-a-half years, Defendant was extradited to Washington, D.C. on April 30, 2015, and made an initial appearance before Magistrate Judge Alan Kay on May 1, 2015.

Defendant has been represented by Manuel J. Retureta for the past five years. On May 11, 2015, the Government filed a Motion for the Court to conduct an inquiry into a potential conflict related to Mr. Retureta's simultaneous representation of Defendant and a cooperating witness in an unrelated case who is expected to testify against Defendant. The parties submitted briefing[1] about this potential conflict and the Court held hearings inquiring into the conflict on June 4, 2015,

---

[1] Defendant's Position on Conflict ("Def.'s Pos."), ECF No. [589]; Government's Supplemental Brief ("Gov't Supp. Br."), ECF No. [608]; Independent Counsel's Supplemental Brief ("Ind. Counsel Supp. Br."), ECF No. [609]; Defendant's Supplemental Brief ("Def.'s Supp. Br."), ECF No. [610]. The parties filed several additional pleadings under seal. Much of what was placed under seal has since been discussed in open court on July 13, 2015, and August 4, 2015, in unsealed hearings.

July 13, 2015, and August 4, 2015. The Court now issues this Memorandum Opinion setting forth the Court's findings and rulings as to the conflicted representation. The Court incorporates and makes a part of this opinion its detailed oral findings on the record issued during the August 4, 2015, hearing.

## I. BACKGROUND

### A. Factual Background

Mr. Retureta has represented Defendant for more than five years with regards to the instant case. Def.'s Pos., at 1. Mr. Retureta filed a Notice of Appearance in this matter on March 4, 2010. *See* ECF No. [200]. Mr. Retureta has also represented an individual for more than four years who is a cooperating witness ("the witness") for the Government against Defendant. Def.'s Pos., at 2. The witness' case is unrelated to Defendant's case, however, the Government has debriefed the witness regarding information that he/she might have relating to Defendant and his co-defendants. *Id.* As the Government was aware of Mr. Retureta's simultaneous representation of Defendant and the witness, the Government forewarned Mr. Retureta "during debriefing prior to its agents making inquiries of [the witness] regarding [Defendant] and his co-defendants, so that [Mr. Retureta] could leave the room." *Id.* Consequently, Mr. Retureta was not present for any debriefings of the witness related to Defendant. *Id.* The Government has indicated that it expects to call the witness as a witness in Defendant's case. Def.'s Pos., at 2; Gov't Supp. Br., at 1.

### B. Procedural Background

On May 11, 2015, the Government filed a motion requesting a hearing for the Court to determine whether a conflict of interest exists with Mr. Retureta's simultaneous representation of Defendant and the witness and whether it may be waived. Defendant filed an opposition.

Mr. Retureta has proposed an arrangement whereby he would remain counsel for Defendant and a second, independent counsel would be secured for Defendant to prepare and

2

conduct cross-examination of the witness.  Mr. Retureta further proposes that additional counsel would be secured to represent the witness at his/her sentencing to the extent the witness' testimony against Defendant is relevant to the witness' sentencing.

On June 4, 2015, the Court conducted its first inquiry into the potential conflict during a status hearing in this matter.  Mr. Retureta represented to the Court during that hearing that he would discuss the potential conflict with the cooperating witness whom he is representing and promptly inform the Court of whether the cooperating witness decided to continue with Mr. Retureta as his attorney.  *See* Order (June 5, 2015), ECF No. [583], at 3.  The Court indicated it would then consider whether to appoint independent counsel to speak with Defendant about the potential conflict.  *Id.*

On June 10, 2015, Mr. Retureta filed a notice with the Court conceding that his simultaneous representation of Defendant and the witness presented a conflict of interest, but indicating that Defendant "ha[d] informed undersigned counsel that he wishes to waive the conflict, and, pursuant to his rights under the Sixth Amendment, desires to retain undersigned counsel as his defense counsel."  Def.'s Pos. at 1.  Mr. Retureta further represented that "he is confident that his performance, on behalf of [Defendant] and the other individual recently announced as a government witness, shall not be adversely affected by his simultaneous representation of them" and proposed that second counsel prepare for and conduct cross-examination of the witness and an additional counsel represent the witness at the witness' sentencing.  *Id.* at 3-4.  As to the witness, Mr. Retureta informed the Court that the simultaneous representation would be discussed with the witness during an upcoming status hearing in the witness' unrelated case before Judge John D. Bates.  *Id.* at 4.  Finally, Mr. Retureta requested that the Court appoint independent counsel to consult with Defendant on the matter of the simultaneous representation and his waiver of the resulting conflict.  *Id.*

The Government filed a response on June 24, 2015, opposing the simultaneous representation of Defendant and the witness and the proposed second counsel arrangement. On July 6, 2015, the Court appointed Barry Coburn of Coburn & Greenbaum PLLC to represent Defendant "for the limited purpose of advising [Defendant] in connection with Mr. Retureta's potential conflict with representing [Defendant] at the same time as representing a potential witness who would testify against [Defendant] at trial." Order (July 6, 2015), ECF No. [597], at 1.

On July 13, 2015, the Court held a second hearing to inquire into the conflicted representation. Mr. Retureta, Mr. Coburn, and counsel for the Government were all present for the hearing. Mr. Retureta represented that Defendant's and the witness' cases were two wholly separate cases. He further represented that once Defendant arrived in the United States, he continued to have contact with his witness client, including preparing status reports, requesting that the sentencing be scheduled, and discussing and informing the witness that there was a potential conflict in representation and independent counsel would be coming to inform him about the conflict. However, Mr. Retureta stated that he had not been present for any of the witness' debriefings related to Defendant and, therefore, does not have any details about what the witness knows or would testify to at Defendant's trial. Mr. Coburn, who had independently met with Defendant, represented to the Court that he saw an actual conflict with Mr. Retureta's simultaneous representation as opposed to a potential conflict. He further argued that "at a minimum,"[2] in order to ameliorate the conflict, there would have to be another lawyer in the case working with Defendant who would prepare and conduct cross-examination of the witness and be involved in closing arguments. At that time, Mr. Coburn felt that in order for the Court to elicit a knowing,

---

[2] This quote and any other quotes from the hearings included in this Memorandum Opinion are reflected in the Court's notes and confirmed by unofficial transcripts of the hearings.

voluntary, and informed waiver of the conflict from Defendant, the identity of the witness would need to be disclosed to Defendant. When the Court inquired as to the nature and importance of the witness' testimony to the Government's case, the Government indicated that the witness would testify that he/she had two separate face-to-face contacts with Defendant and engaged in conversations to set up more than one drug transaction. The Government objected to disclosing the identity of the witness for safety reasons. The Government also objected to the simultaneous representation even if the conflict were waived by Defendant.

The Court ordered the parties to provide supplemental briefing on the conflict with specific attention to the issue of whether appointing second counsel to conduct cross-examination of the witness would ameliorate the conflict in this matter. *See* Order (July 13, 2015), ECF No. [603], at 1. The supplemental briefs filed by counsel for the Government, Mr. Retureta, and Mr. Coburn engaged with the principal cases in which courts have either accepted or rejected the appointment of second counsel to ameliorate a conflict in representation. In addition, the Government indicated in its supplemental brief that "the Government does not believe that [the witness'] testimony can be introduced through any other Government witnesses." Gov't Supp. Br., at 3.

On August 4, 2015, the Court held the third and final hearing inquiring into the conflict in this case. Present at the hearing were counsel for the Government, Mr. Retureta, Mr. Coburn, and Howard Katzoff, second counsel appointed by Judge Bates to advise the witness on the conflict issue and to represent the witness in preparing his/her testimony for Defendant's trial. Mr. Katzoff was also appointed by Judge Bates to represent the witness in his/her case in front of Judge Bates to the extent that issues relating to the witness' testimony in Defendant's trial arise. During the hearing, Mr. Katzoff represented that the witness had waived conflict-free counsel with respect to the matter before Judge Bates and that Judge Bates had accepted the witness' waiver after ensuring that the witness understood the potential adverse consequences and limitations of the conflicted

5

representation. However, the witness did not waive attorney-client privilege, including confidences and secrets, over information known to Mr. Retureta by virtue of his representation of the witness. Mr. Katzoff further represented that should the witness be called by the Government to testify at trial in this case, he will represent the witness relating to the witness' testimony. Mr. Katzoff will also be present at any future debriefings and discussions with the witness up through sentencing of the witness. Mr. Retureta also represented during the hearing that, unless the witness objects, Mr. Retureta would not be present at any of the future debriefings of the witness, regardless of their subject matter. Mr. Retureta would, however, represent the witness at sentencing, except as to any cooperation in Defendant's trial.

During the hearing, the Court also conducted an extensive inquiry of Defendant to ensure that he understood his rights in terms of effective assistance of counsel and that Mr. Retureta had a conflict in representing Defendant and the witness. The Court also laid out in great detail the proposed second counsel arrangement for Defendant and the role Mr. Retureta would assume for each client. Specifically, the Court explained that, under the proposed arrangement, Mr. Retureta would handle all matters related to Defendant, the trial, discussions, pleas, and sentencing, but would not be involved with any matters relating to the witness' testimony at Defendant's trial. Instead, separate counsel would be appointed to cross examine the witness and, if necessary, participate in opening and closing arguments in so far as they relate to the witness. The Court further explained that if Defendant is convicted, Mr. Retureta would not say anything at sentencing about any issues relating to the witness' testimony. The Court made clear that, nevertheless, Mr. Retureta and separate counsel could discuss overall strategy of his case. The Court then obtained Defendant's knowing and intelligent waiver of conflict-free counsel and Defendant's consent to the second counsel arrangement.

## II.   LEGAL STANDARD

The Sixth Amendment guarantees a defendant in a criminal prosecution the right to "have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The Supreme Court has interpreted this right to include a "presumption in favor of counsel of choice," *Wheat v. United States*, 486 U.S. 153, 164 (1988), and also "a right to representation that is free from conflicts of interest," *Wood v. Georgia*, 450 U.S. 261, 271 (1981). However, a criminal defendant's right to counsel of his choice is not absolute. *Wheat,* 486 U.S. at 159 (1988). The Sixth Amendment's "essential aim" "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* "[T]he trial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Id.* at 161. Like other constitutional rights, "the Sixth Amendment right to conflict-free representation is subject to knowing and voluntary waiver." *U.S. v. Lopesierra-Gutierrez*, 708 F.3d 193, 200 (D.C. Cir. 2013). However, "the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat,* 486 U.S. at 163. "[W]here a court justifiably finds an actual conflict of interest, there can be no doubt that it may decline a proffer of waiver [of the conflict], and insist that defendants be separately represented." *Id.* at 162.

## III.   DISCUSSION

The parties are in agreement that Mr. Retureta's simultaneous representation of Defendant and the witness testifying against Defendant creates an actual conflict of interests. *See* Def.'s Pos.,

7

at 3-4; Gov't Supp. Br., at 1. District of Columbia Rules of Professional Conduct 1.7(b)(1) and (2) make clear that

> a lawyer shall not represent a client with respect to a matter if:
>
> (1) That matter involves a specific party or parties and a position to be taken by that client in that matter is adverse to a position taken or to be taken by another client in the same matter even though that client is unrepresented or represented by a different lawyer;
>
> (2) Such representation will be or is likely to be adversely affected by representation of another client.

*See also United States v. Weaver*, 265 F.3d 1074, 1075-77 (D.C. Cir. 2001) (holding that counsel's representation of a client and a potential witness against the client created a conflict of interest); *U.S. v. Cordoba*, No. 12-20157, 2013 WL 5741834, at *13 (S.D. Fla 2013) (same). However, an actual conflict of interests, such as the one at issue here, will not violate the Sixth Amendment, if the conflict does not adversely affect counsel's performance. *See Mickens v. Taylor*, 535 U.S. 162, 166-74; *see also Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980). Moreover, a defendant can waive the right to conflict-free assistance of counsel if the waiver is knowing and intelligent. *See Holloway v. Arkansas*, 435 U.S. 472, 483 n.5 (1978). District of Columbia Rule of Professional Conduct 1.7(c) provides that

> A lawyer may represent a client with respect to a matter [in which a conflict arises due to simultaneous representation] if
>
> (1) Each potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation; and
>
> (2) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client.

Although an actual conflict exists due to Mr. Retureta's simultaneous representation of Defendant and the witness, the Court shall allow Mr. Retureta to represent Defendant in this matter because

the Court is assured that he will provide "competent and diligent representation" to each client and because each client has provided informed consent to such representation.

### A. Competent and Diligent Representation

First, the Court is satisfied that Mr. Retureta, with the assistance of second counsel for Defendant and Mr. Katzoff for the witness, is able to provide both clients with competent and diligent representation. Mr. Retureta and Defendant have a longstanding attorney-client relationship that Defendant clearly values and does not want to relinquish as he made clear at the August 4, 2015, hearing. As Mr. Coburn argued at the July 13, 2015, hearing, given this "very solid and highly valued attorney-client relationship," "if there is an appropriate manner of addressing this actual conflict such that Mr. Retureta could remain in the case, . . . there is a very significant imperative to attempting to do so." *See U.S. v. Caramadre*, 892 F.Supp.2d 397, 408 (D.R.I. 2012) ("to unnecessarily deprive [defendant] of his Sixth Amendment right to choice of counsel would certainly threaten the integrity of the judicial process, particularly where [defendant] has numerous serious charges lodged against him."). The Court finds that Mr. Retureta's proposal to have a second, independent counsel represent Defendant for the purposes of cross-examination of the witness at Defendant's trial and, if necessary, preparing and delivering opening and closing arguments as they relate to the witness, will ensure that Defendant receives the competent and diligent representation of his choice while Mr. Retureta maintains his ethical obligations to each of his clients.

The Government argues that the "Chinese Wall" created by this arrangement "is not sufficient to uphold the integrity of the proceedings and ensure both the Defendant and cooperating witness receive adequate representation in their respective cases." Gov't Supp. Br., at 5. The Government appears particularly concerned about Mr. Retureta's conflicting obligations vis-à-vis acting on any incriminating evidence he may have obtained about the cooperating witness through the

course of his representation of the witness. The Government contends that "if defense counsel does not act, he is failing to effectively represent the Defendant; while if he does act, he breaks his ethical obligations to the cooperating witness." *Id.* The Government urges the Court to follow cases in which courts have rejected the erection of a "Chinese Wall" as a solution to a conflict arising out of the simultaneous representation of a defendant and a witness against the defendant. *See id.*, at 3-6 (citing *United States v. Bikundi*, ---F.Supp.3d---, 2015 WL 632363 (D.D.C. Feb. 13, 2015); *United States v. Cordoba*, No. 12-20157, 2013 WL 5741834 (Oct. 17, 2013); *United States v. Locascio*, 357 F.Supp.2d 536 (E.D.N.Y. 2004); *United States v. Miranda*, 936 F.Supp. 945 (S.D.Fla. May 14, 1996); *United States v. Davis*, 780 F.Supp. 21 (D.D.C. 1991)).

The Court disagrees with the Government's analysis. In the cases relied upon by the Government, the conflicted attorney knew the nature of the likely witness testimony because the attorney was involved in discussions regarding the transactions at issue in those particular cases. As a result, the courts in those cases had to count on the conflicted attorney keeping the information he or she received from the witness separate from any information obtained from the defendant. Here, Mr. Retureta has not had any discussions with the witness about his/her testimony relating to Defendant and was not present or involved in any of the witness' debriefings related to Defendant. As a result, Mr. Retureta does not know the contents of the witness' testimony beyond what the government has proffered to the Court—two separate drug transactions face-to-face, personally conducted with the defendant, with no other witness testifying to this effect. Unlike the attorneys in the cases relied upon by the Government, Mr. Retureta does not need to separate out the information he has about the witness' testimony because he does not know this information. In addition, Mr. Retureta will not be part of the debriefings of the witness in the future. What Mr. Retureta knows from the witness as a result of his representation of the witness on other matters unrelated to Defendant, including any confidences or secrets that the witness imparted to him,

cannot be disclosed or used because the attorney-client privilege protects this information.

The rationale behind the courts' rejection of the "Chinese Wall" arrangement in many of the cases cited by the Government is based, in large part, on the courts' distrust of the conflicted attorney and, specifically, the attorney's ability to maintain client confidences. *See, e.g., Bikundi*, 2015 WL 632363, at *8 (rejecting second counsel arrangement where concerning representations made by conflicted counsel led "the Court [to have] [ ] concerns regarding the ability of any co-counsel to stay fully independent from [conflicted counsel]"); *see also Caramadre*, 892 F.Supp.2d at 405 ("The rationale behind the courts' rejection of the 'Chinese Wall' solution in these cases amounts to a distrust of the conflicted attorney."). Here, Mr. Retureta has represented that he does not have any information from the witness related to Defendant and the Court is confident that he will not provide second counsel or Defendant any confidential information obtained through his representation of the witness or otherwise violate his ethical duties to either client. As a result, second counsel will conduct cross-examination of the witness with only the information that he or she has gathered through his or her own independent investigation and preparation. The Court has had several trials and contacts with Mr. Retureta over the years and has no question about his integrity. Accordingly, the Court will rely upon the good faith and judgment of counsel and find that the proposed second counsel arrangement sufficiently addresses any ethical concerns arising from the conflicted representation. *See Sullivan*, 446 U.S. at 347 (noting that courts may rely on the good faith and good judgment of defense counsel).

Moreover, second counsel representing Defendant for the purposes of cross-examination of the witness and, if necessary, part of the opening and closing arguments, will ensure that Defendant receives zealous advocacy as to all aspects of his case. Indeed, Mr. Retureta, with the assistance of second counsel, will be able to advocate just as zealously as any new counsel who would be appointed to replace Mr. Retureta. Mr. Retureta does not know what the witness'

testimony will be and neither would new counsel. As the Government notes, due to his ethical obligations, Mr. Retureta will not be able to provide Defendant any inculpating information he might have obtained about the witness through his representation of the witness that could assist Defendant's case, including the witness' identity. However, this information known to Mr. Retureta, which, importantly, does not include any information about Defendant, will never be disclosed to Defendant or any separate counsel regardless of whether Mr. Retureta represents Defendant or the Court appoints new counsel in Mr. Retureta's stead. Accordingly, any new counsel coming in to the case would be in the same position as Mr. Retureta, not knowing what the witness is going to say and not possessing any information about the witness that he or she could provide to Defendant, including the identity of the witness. Of course, new counsel would then be able to investigate on his or her own to zealously prepare for cross-examination and opening and closing arguments and would not be deterred from intense probing of the witness to protect client confidences. However, second counsel appointed to represent Defendant alongside Mr. Retureta would also be able to undertake such zealous advocacy without concern about conflicted loyalties. Accordingly, the Court finds there is no advantage to replacing Mr. Retureta with new counsel, especially when the proposed second counsel arrangement would permit the continuation of the highly-valued, long-standing attorney-client relationship between Defendant and Mr. Retureta.

During the August 4, 2015, hearing Mr. Coburn indicated that he was "in complete agreement with the Court's analysis" as outlined above and that, as a result of this analysis, a knowing and intelligent waiver of the conflict could be obtained from Defendant without informing Defendant of the identity of the witness. The Court and Mr. Coburn agreed, however, that it may be necessary for the Court to revisit the waiver once the witness' identity is disclosed to Defendant.

In addition, the conflict in this case is distinguishable from the conflicts in the cases cited by the Government because it does not permeate the entire case. According to the parties' representations, the witness' and Defendant's cases are unrelated. *See Bikundi*, 2015 WL 632363, at *6 (rejecting second counsel arrangement where defense attorney represented defendant and his co-defendant stepson at different stages of the same case and represented six related companies that were the subject of subpoenas in the same matter); *Cordoba*, 2013 WL 5741834, at *12 (rejecting second counsel arrangement where defendant and witness were represented by the same attorney in "substantially-related" matters). Moreover, the witness' testimony appears to be about two discrete transactions with Defendant. Per the Government's representations, the witness will not be offering expansive testimony about the history of the conspiracy as a whole such that it would be difficult to separate the witness' testimony out from the overall defense strategy. *See Losacio*, 357 F.Supp.2d at 557 (rejecting second counsel proposal where "the conflict [could not] be so neatly compartmentalized" because "the specter of Ms. Jaffe as a potential witness and the impact of her testimony will extend beyond her mere cross-examination; it will permeate the entire trial, including the opening statement, summation, and advice to Chanes as to whether or not he should testify"); *Bikundi*, 2015 WL 632363, at *8 (rejecting second counsel arrangement where counsel represented co-defendants at different stages of the same case causing "the present conflict [to] extend[] beyond just the cross-examination of Mr. Igwacho and infect[] every aspect of the trial presentation"); *cf. U.S. v. Poulsen*, No. CR2-06-129, 2006 WL 2619852, at *12 (S.D. Oh. Sept. 12, 2006) (accepting use of independent counsel for cross-examination where the witness' testimony "though certainly helpful" "is likely not the lynchpin of this sixty-count case"). Accordingly, appointment of second counsel will sufficiently address this discrete conflict.

Finally, most of the cases cited by the Government in which courts rejected similar "Chinese Wall" arrangements were complicated by the fact that either the defendant or the witness

or both did not provide voluntary and knowing consent to conflicted counsel or the "Chinese Wall" arrangement. *See Cordoba*, 2013 WL 5741834, at *13 (granting motion to disqualify, partially on the basis that the defendant's waiver of the conflict of interest did not appear to be knowingly and intelligently given as she had changed her mind regarding the waiver multiple times over the course of several hearings, and the witness refused to waive the conflict); *Bikundi*, 2015 WL 632363, at *8-*9 (rejecting second counsel arrangement where court had concerns about the voluntariness of both parties' waiver of their rights); *Miranda*, 936 F.Supp. at 950 (rejecting second counsel arrangement where the witness had not waived the conflict); *Davis*, 780 F.Supp. at 22 (rejecting second counsel arrangement where defendant was willing to waive the conflict of interest, but witness stated that he was not willing to do so). As discussed above, the witness consented to conflicted representation before Judge Bates and to the arrangement with Mr. Katzoff as second counsel. As discussed below, Defendant has given informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation. Accordingly, the Court finds that the second counsel arrangement proposed by Mr. Retureta is sufficient to ensure that Defendant and the witness have competent, diligent, and ethical representation.

### B. Informed Consent to Conflicted Representation

The Court further finds that Defendant has provided knowing, intelligent, and voluntary consent to this representation and the second counsel arrangement. On August 4, 2015, the Court questioned Defendant in open court to ensure that he understood what his rights are in terms of effective assistance of counsel and to determine whether he agreed to the proposal as to his representation by conflicted counsel and a second counsel. The Court's inquiry of Defendant demonstrates that he understands the following: (1) he has a right to have an attorney who is not representing a witness against him; (2) there is a conflict with Mr. Retureta representing him in

the case going forward to trial, while at the same time representing a witness who is going to testify against him; and (3) he is entitled to an attorney who does not have this conflict and such an attorney can be appointed for him.

As to Mr. Retureta's and Mr. Katzoff's representation of the witness, the Court's inquiry demonstrates that Defendant understands the following: (1) Mr. Retureta has been present for discussions between the witness and the Government about matters not related to him, but has been excluded from these discussions if they related to him or his family generally; (2) Mr. Retureta will continue as counsel for the witness, in the witness' case, on all matters that are unrelated to him; (3) Mr. Katzoff, and not Mr. Retureta, will represent the witness in all matters relating to the testimony against him. Mr. Katzoff will prepare the witness, will have access to all the information relating to the witness' testimony, or any other information the witness might have provided; (4) Mr. Retureta will not be present for debriefings of the witness going forward; instead, Mr. Katzoff will be present for all of the debriefings, unless the witness objects; (5) Mr. Retureta will, however, participate in the witness' sentencing, but will not make any comments about any testimony the witness provided in his trial; and (6) Mr. Retureta is not going to disclose any information to any person that Mr. Retureta received from the witness because the witness has asserted the attorney-client privilege over the information, as well as confidences and secrets.

As to Mr. Retureta's and second counsel's representation of Defendant, the Court's inquiry demonstrates that Defendant understands the following: (1) Mr. Retureta is not going to tell the witness or Mr. Katzoff any information Mr. Retureta has heard from him; (2) Mr. Retureta will handle all matters related to him, the trial, discussions, pleas, and sentencing, but will not be involved with any matters relating to the witness' testimony; (3) separate counsel will be appointed in addition to Mr. Retureta to cross-examine the witness, and, if necessary, participate in opening and closing arguments in so far as they relate to the witness; (4) separate counsel will be able to

go out and investigate information on his or her own—but not from Mr. Retureta or Mr. Katzoff—to prepare to cross-examine the witness; (5) if he is convicted, Mr. Retureta will say nothing at sentencing about any issues relating to the witness' testimony; and (6) Mr. Retureta and separate counsel can discuss overall strategy of his case.

The Court confirmed that Defendant understood and did not have any concerns about having an attorney "who is not solely loyal to you, but has some loyalty to the witness because he's still representing the witness." The Court further confirmed that Defendant did not have any concerns about whether there is a conflict "as to whether [Mr. Retureta] wants to get you acquitted, [and] on the other hand he wants to get the witness to get the benefit from cooperating with the government." Defendant then explicitly waived his right to conflict-free counsel and agreed to have Mr. Retureta continue to represent him with separate counsel handling cross-examination of the witness and opening and closing arguments as they relate to the witness. Ultimately, the Court found that Defendant made a knowing and intelligent waiver. The Court noted that it would revisit the waiver and the "Chinese Wall" arrangement if the witness objects to not having Mr. Retureta involved in the debriefings or if Defendant has a different view of the matter at the point that the identity of the witness becomes known.

Defendant had an opportunity to discuss this conflict with Mr. Coburn, an independent attorney appointed by the Court to advise Defendant on the conflict independent of Mr. Retureta. Defendant then clearly asserted in open court that he agreed to the second counsel arrangement and to waive conflict-free counsel in response to the Court's extensive questioning about the conflict. Indeed, Defendant was adamant in Court that Mr. Retureta continue to represent him. The Court finds that these facts confirm that Defendant has knowingly, intelligently, and voluntarily waived any conflicts of interest that may arise from Mr. Retureta's simultaneous representation of the witness and Defendant.

The Court further finds that Defendant's knowing, intelligent, and voluntary waiver of the conflict and acceptance of the second counsel arrangement also alleviates the Government's concerns regarding the appearance of impropriety arising out of the dual representation. *See* Gov't Supp. Br., at 3. In open court, Defendant clearly accepted the limitations on Mr. Retureta's representation of him. Indeed, Defendant's waiver was obtained after the Court held three hearings inquiring in great detail into the conflict. Defendant was present at each hearing and his waiver was obtained after consulting with independent counsel and responding to the Court's thorough waiver colloquy establishing that Defendant was aware of his rights and the conflicted representation. In addition, second counsel will be exclusively responsible for preparing and conducting all litigation activities related to the witness and will be able to zealously advocate for Defendant without concern for any obligations vis-à-vis the witness. Neither the witness nor Defendant have waived their attorney-client privilege, but Defendant will not be prejudiced by the witness' exercise of the attorney-client privilege because Defendant would not receive such information regardless of who represented him. Accordingly, the Court finds that no impropriety, actual or perceived, would result from Defendant's representation by Mr. Retureta with the assistance of second counsel in the trial before this Court and the witness' representation by Mr. Retureta with the assistance of Mr. Katzoff in the witness' case before Judge Bates.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the facts of Mr. Retureta's representation of Defendant in this criminal matter do not warrant Mr. Retureta's disqualification at this time on this record.

**SO ORDERED.**

                                          */s/*
                                    **COLLEEN KOLLAR-KOTELLY**
                                    UNITED STATES DISTRICT JUDGE