**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES,<br><br>    v.<br><br>ELIU LORENZANA-CORDON and<br>WALDEMAR LORENZANA-CORDON,<br><br>    Defendants. | Criminal Action No. 03-cr-331-13-14 (CKK) |

**MEMORANDUM OPINION**
(October 30, 2015)

Presently before the Court is the Government's [614] Motion to Admit Other Crimes Evidence at Trial ("Motion").  For the reasons stated below, upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Government's Motion to Admit Other Crimes Evidence at Trial is GRANTED-IN-PART and HELD-IN-ABEYANCE-IN-PART.  Specifically, upon close review of the record currently before the Court, the Court finds that the following evidence shall be admitted evidence as evidence intrinsic of the alleged conspiracy:

- evidence of Defendant Eliu's arrest in February 1999 where he possessed multiple firearms and weapons, including AK-47s, M-16s, and submachine guns;
- evidence of Defendants' use and possession of firearms during the time period of the alleged conspiracy;
- evidence of Defendants' use of heavily-armed security during the time period of the alleged conspiracy;
- evidence relating to the drug ledgers seized by Guatemalan officials on April 2, 2003; and
- evidence, through the testimony of cooperating witnesses, that proceeds from and funds for drug trafficking were being laundered from the U.S. to Mexico, Guatemala, and Colombia, during the time period of the alleged conspiracy.

---

[1] The Court's consideration has focused on the following documents:  Indictment, ECF No. [173], Govt.'s Mot. to Admit Other Crimes Evidence at Trial ("Govt.'s Mot."), ECF No. [614], Defs.' Mem. in Opp'n to Govt.'s Mot. to Admit Other Crimes Evidence at Trial ("Defs.' Opp'n"), ECF No. [630], and Govt.'s Reply to Defs.' Opp'n ("Govt.'s Reply"), ECF No. [638].

Upon close review of the record currently before the Court, the Court further finds that the following evidence shall be conditionally admitted as "other acts" evidence under Rule 404(b).  The Court shall defer judgment until trial as to whether such evidence should be excluded under Federal Rule of Evidence 403.

- evidence of bribes paid by Defendants and other co-conspirators outside the time frame of the alleged conspiracy;
- evidence of bribes paid by Defendants and other co-conspirators during the alleged conspiracy;
- evidence of Defendants' use of firearms and armed security, outside the time frame of the alleged conspiracy;
- evidence relating to co-Defendant Harold Lorenzana's possession and use of rockets to shoot down law enforcement aircraft; and
- evidence, through the testimony of cooperating witnesses, that proceeds from and funds for drug trafficking were being laundered from the U.S. to Mexico, Guatemala, and Colombia, outside the time period of the alleged conspiracy.

## I. BACKGROUND

Defendants are charged with one count of conspiracy to import over five kilograms of cocaine into the United States in violation of 21 U.S.C. § 959, 960, and 963.  Indictment at 3.[2] The Indictment charges that Defendants "knowingly and intentionally" conspired to manufacture and distribute cocaine in "the Republic of Colombia, El Salvador, Guatemala, Mexico, and elsewhere," from approximately March 1996 to April 2009, the filing date of the Indictment, knowing that the drugs would be unlawfully imported into the United States.  *Id.* at 3-4.  The Indictment also includes a "Forfeiture Allegation" pursuant to 21 U.S.C. §§ 853 and 970, stating that the Defendants shall forfeit their "respective right, title or interest" in the proceeds derived from the alleged conspiracy.  *Id.* at 4.

---

[2] The Indictment is still under seal, and has only been unsealed as to these Defendants.  *See* Redacted Indictment, ECF No. [563].

The Government's theory of the conspiracy is, in general, that from March 1996 to April 2009, Defendants were significant members of a complex international drug trafficking organization ("DTO") that received, inventoried, and stored large quantities of cocaine, worth millions of dollars, from Colombia, to be imported into Mexico, and ultimately, the United States, for further distribution.  Govt.'s Mot. at 2.  The Government alleges that multi-kilogram cocaine shipments were smuggled into Guatemala by land from El Salvador, via "go-fast" boats from Colombia, or arrived directly by aircraft, which landed on clandestine airstrips located on properties owned and/or utilized by the DTO, including Defendants.  *Id.* at 2-3.  Once in Guatemala, the cocaine shipments were allegedly received, inventoried, and stored on properties owned and/or utilized by the DTO, including Defendants.  *Id.* at 3.  The Government intends to prove at trial that Defendants took the lead in planning, organizing, and directing where shipments of cocaine would be stored upon their delivery to Defendants' properties in Guatemala.  *Id.*  The Government also intends to show that in order to protect the cocaine shipments from being seized from law enforcement or stolen from rival DTOs, Defendants and members of their organization used corruption and heavily-armed security to ensure that the cocaine shipments made it safely to their next destination along the distribution route toward the United States.  *Id.*  Additionally, the Government alleges that Defendants and other members of their DTO received payments in proceeds and cocaine for their involvement in the conspiracy.  *Id.*  Defendants and other members of the DTO then allegedly sold the cocaine to Mexican drug traffickers in Guatemala, knowing or intending that it would be further distributed to the United States.  *Id.*

In the instant motion, the Government has given notice of its intent to introduce three categories of "other crimes" evidence against Defendants in support of the above allegations.

First, the Government seeks to admit evidence of public corruption, bribery, and obstruction of justice as direct evidence of Defendants' involvement in the charged conspiracy. *Id.* at 4. According to the Government, it will use this evidence to prove at trial that in order for the DTO to effectively run its operation of transporting cocaine from Colombia through Guatemala and Mexico and into the United States, Defendants and co-conspirators paid Guatemalan law enforcement officials to provide information to the DTO, to avoid law enforcement's detection and interference with the movement of cocaine, and also to release co-conspirators from prison. *Id.* at 3. Second, the Government seeks to admit evidence relating to possession of weapons in furtherance of the conspiracy by Defendants and other co-conspirators. *Id.* at 5. According to the Government, it will use this evidence to prove at trial that to ward off competition, protect the cocaine, and maintain stability within the DTO, Defendants and co-conspirators possessed weapons to further their operation of trafficking narcotics. *Id.* at 3-4. Third, the Government seeks to introduce evidence of money laundering, related to the movement of drug payments and drug-related proceeds to and by DTO. *Id.* at 6. According to the Government, it will use this evidence to prove at trial that the laundering activities were necessary to promote the complex international trafficking operations in which Defendants and their DTO were engaged. *Id.* at 4.

## II. LEGAL STANDARD

The issue before the Court is whether the evidence the Government intends to offer can be considered either evidence intrinsic to the crimes charged or evidence of "other acts" subject to Federal Rule of Evidence 404(b). The distinction is meaningful because under Rule 404(b), "[e]vidence of other a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed . R. Evid. 404(b). However, such "other acts" evidence may be admitted for "another

purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," but the defendant is entitled to notice and a limiting instruction restricting the jury's consideration of the evidence to the purpose for which it is admitted. *See* Fed. R. Evid. 404(b), 105. By contrast, evidence that is "intrinsic" to the crimes charged is not subject to the limitations of Rule 404(b) because, by its very nature, it does not involve "other crimes, wrongs, or acts," and thus there is no concern that it might be used as improper character evidence. *United States v. Bowie,* 232 F.3d 923, 927 (D.C. Cir. 2000).

Furthermore, to admit "other acts" evidence under Rule 404(b), the Court must apply a two-step mode of analysis that is not required when determining whether evidence is "intrinsic" of the charged offense. Under the first step, which addresses Rule 404(b), "[the court] must determine whether the evidence is relevant to a material issue other than character. If so, [the court] proceeds to the second inquiry," under Rule 403, "whether the probative value is substantially outweighed by the prejudice." *United States v. Burch,* 156 F.3d 1315, 1323 (D.C. Cir. 1998) (quoting *United States v. Mitchell,* 49 F.3d 769, 775 (D.C.Cir.1995)). Accordingly, if the evidence is not intrinsic to the charged offense, it is generally admissible under Rule 404(b) for any purpose other than to prove character and to show action in conformity therewith. *See Bowie,* 232 F.3d at 929–30 ("Rule 404(b) is a rule of inclusion rather than exclusion."). The government need not show that the evidence is being offered for one of the purposes specifically enumerated in the rule. *Id.* Rather, the government need only show that it is offered for a valid purpose other than to prove the defendant's propensity to commit similar acts. *Id.*

The D.C. Circuit has criticized the distinction between "intrinsic" and "extrinsic" evidence, commonly invoked to avoid the procedural requirements associated with introducing "other crimes evidence" pursuant to Rule 404(b). *See Bowie*, 232 F.3d at 927. Notably,

"intrinsic" evidence of a charged offense will always satisfy the requirements of Rule 404(b), thus the distinction serves only to "relieve the prosecution of Rule 404(b)'s notice requirement and the Court of its obligation to give an appropriate limiting instruction upon defense counsel's request." *Id.* The *Bowie* court explained that although the D.C. Circuit had framed the inquiry in terms of whether the evidence was "inextricably intertwined" with the charged crime, it had never previously defined the meaning of that term. *Id.* at 928. Attempts by other circuits to define "inextricably intertwined" proved unhelpful, as they were circular and overly broad. *Id.* (rejecting the approach adopted by other circuits defining "inextricably intertwined" evidence as that which "completes the story" or "explains the circumstances" of the charged offense).

Nevertheless, the *Bowie* Court recognized that (at least) two types of evidence may be properly considered "intrinsic," that is, not subject to Rule 404(b): (1) evidence "of an act that is part of the charged offense"; and (2) evidence of "some uncharged acts performed contemporaneously with the charged crime . . . [that] facilitate the commission of the charged crime." *Id.* at 929. However, "it cannot be that all evidence tending to prove the crime is part of the crime." *Id.* In *Bowie*, the application was straightforward. The D.C. Circuit held there that evidence that the defendant had been caught with counterfeit currency one month prior to his arrest for possession of counterfeit bills with the exact same serial numbers was not intrinsic to the later crime of possession. *Id.* The Court concluded that although all of the bills "were doubtless from the same batch, and the evidence indicated that Bowie purchased them at one time[,] . . . the indictment charged him only with possession of the counterfeit bills found on [the later date]." *Id.* Accordingly, the evidence had to be analyzed under the rubric of Rule 404(b). *Id.*; *cf. United States v. Alexander*, 331 F.3d 116, 125-26 (D.C. Cir. 2003) (holding that evidence that the defendant had a gun in his possession just minutes before he was arrested for unlawful

possession of a firearm constituted direct evidence of the charged crime and not evidence of an "other" act).

However, where the crime charged is conspiracy, evidence closely related to the conspiracy alleged in the indictment is admissible as intrinsic evidence. *See United States v. Badru,* 97 F.3d 1471, 1475 (D.C. Cir. 1996) (quoting 22 CHARLES A. WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5239, at 450 (1978)) ("In cases where the incident offered is part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) because it is not an 'other' crime.  The evidence is offered as direct evidence of the fact in issue.").  By contrast, where evidence of prior acts relates to actions substantially different from the goals of the conspiracy charged, and occurs prior to the commencement of the conspiracy period, that evidence is better analyzed as falling under the purview of Rule 404(b).  *United States v. Larrahondo*, 885 F. Supp. 2d 209, 227-28 (D.D.C. 2012); *United States v. Morrow,* Crim. No. 04–355, 2005 WL 3159572, at *8 (D.D.C. 2005).

### III. DISCUSSION

The Government seeks to introduce three categories of evidence.  For each category, the Government argues that the evidence is admissible as intrinsic evidence, or in the alternative, as other acts evidence under 404(b).  Defendants oppose Government's introduction of evidence, arguing that the evidence is neither intrinsic to the charged conspiracy, nor admissible for any non-propensity purposes.  Defendants argue that the evidence should be excluded under Rule 403, and that the evidence should not be admitted until the Government completes discovery and better describes the contents of the proffered evidence.

**A.  Evidence of Bribes to Guatemalan Government Officials and Obstruction of Justice**

The Government intends to prove at trial that in order for the DTO to effectively run its operation of transporting cocaine from Colombia through Guatemala and Mexico and into the United States, Defendants and co-conspirators paid Guatemalan army and law enforcement officials to provide information to the DTO, to avoid law enforcement's detection and interference with the movement of cocaine, and also to release co-conspirators from imprisonment.  Govt.'s Mot. at 3.

To prove this, the Government intends to introduce evidence, predominantly through the testimony of cooperating witnesses with firsthand knowledge, that starting in approximately 1994 forward, Defendants and other co-conspirators paid members of the Guatemalan army (including a Captain in charge of intelligence) to provide information to Defendants and members of the DTO in order to allow the DTO to avoid law enforcement detection and seizure when transporting multi-kilogram shipments of cocaine.  *Id.* at 4.  The Government further seeks to introduce evidence, through the testimony of cooperating witnesses that (1) Defendants and other co-conspirators told these cooperating witnesses that the police in Zacapa, Guatemala, were paid off by the DTO and that Defendants "owned the police"; (2) Defendants told the cooperating witnesses that the DTO maintained control over the police in that geographic area in order to assist the DTO's drug trafficking activities; (3) the police assisted the DTO by transporting drugs in order to protect the drugs from being stolen; (4) the anti-narcotics unit in Guatemala transported the cocaine in official vehicles for the DTO; (5) Defendants discussed how the police were paid off to tell Defendants and other co-conspirators when it was "safe" to land planes laden with cocaine; (6) Defendants discussed their willingness to bribe Guatemalan governmental and law enforcement members on behalf of other co-conspirators and drug

traffickers under investigation by law enforcement.  *Id.* at 4-5.  Finally, the Government seeks to introduce evidence, through testimony of cooperating witnesses, that Defendants and co-conspirators paid bribes to Guatemalan officials in order to secure Defendant Eliu's release from imprisonment after an arrest in February 1999.  *Id.* at 5.

The Government argues that all of this evidence is "inextricably intertwined with the evidence regarding the charged conspiracy, and is necessary to complete the story of this complex and sophisticated DTO."  *Id.* at 10-11.  The Government, however, fails to cite any cases from this circuit in support of their argument, instead citing a Seventh Circuit decision, *United States v. Senffner*, 280 F.3d 755, 765 (7th Cir. 2002).  In *Senffner*, the court upheld a lower court's admissions of evidence of bribe payments to because it showed how a "criminal enterprise began and developed throughout the life of [an] investment fraud scheme."  *Id.*  That court, however, admitted the evidence using a definition of "inextricably intertwined" that the D.C. Circuit has expressly rejected as "over broad."  *See Bowie*, 232 F.3d at 927.  The "inextricably intertwined" doctrine applied by the Seventh Circuit in *Senffner* encompasses a range of evidence—including evidence that would "complete the story" or "explain the circumstances" of the charged crime—that would not be considered intrinsic evidence in this Court.  *Compare Senffner*, 280 F.3d at 764, *with Bowie*, 232 F.3d at 927.  As the D.C. Circuit has repeatedly held, as recently as this year, "evidence is not generally rendered intrinsic simply because it completes the story or explains the circumstances behind a charged offense."  *United States v. Bell*, 795 F.3d 88, 100 (D.C. Cir. 2015).  Rather, for evidence to be considered intrinsic evidence where the charged crime is a conspiracy, the evidence must at least be "closely related to the conspiracy."  *See Badru,* 97 F.3d at 1475.  Accordingly, the Court will examine the

evidence of bribes that the Government seeks to introduce according to the rubric applied by the courts in this circuit.

As a threshold matter, evidence relating to acts occurring prior to the start of an alleged conspiracy cannot be considered intrinsic evidence. *See Bowie*, 232 F.3d at 929; *United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 161 (D.D.C. 2013). Accordingly, the Court finds that evidence of bribes paid by Defendants and other co-conspirators prior to March 1996 is not intrinsic to the charged offense of conspiracy. *See id.* Rather, the Court finds that such evidence of bribes is properly considered "other acts" evidence admissible under 404(b). *See Larrahondo*, 885 F. Supp. 2d at 228. This evidence is probative of Defendants' knowledge and absence of mistake within the conspiracy. Furthermore, the evidence, as noted by the Government, explains the circumstances around the alleged conspiracy by providing content and background to the jury. Such "completing the story" evidence, although not admissible as intrinsic evidence, may properly be admitted under 404(b) for any non-propensity purpose. *See Bowie*, 232 F.3d at 929. Accordingly, the Court shall conditionally admit this evidence pursuant to Rule 404(b), but shall defer judgment until trial as to whether it should be excluded under Federal Rule of Evidence 403.[3]

As to the evidence relating to the payment of bribes by Defendants and other co-conspirators after March 1996, the Court cannot make a determination, based on the record at this time, as to whether such evidence can be considered intrinsic to the charge of conspiracy. The Court observes that as the parties proceed with discovery, the record may develop to show that the

---

[3] The Court also reserves the right to reconsider under what theory the evidence is admissible if further factual development at trial puts the evidence in a different light. *See Larrahondo*, 885 F. Supp. 2d at 228.

evidence of bribes after March 1996 is "closely related to the conspiracy" and constitutes direct evidence of "uncharged acts performed contemporaneously" with the conspiracy.  However, the Court cannot make such a determination based on its review of the record currently before it.[4]

Finally, just as evidence of bribes paid *before* the start of an alleged conspiracy is considered "other acts" evidence admissible under 404(b), evidence of bribes paid *during* the alleged conspiracy is certainly considered "other acts" evidence admissible under 404(b).  *See Larrahondo*, 885 F. Supp. 2d at 228.  Accordingly, the Court shall conditionally admit evidence relating to the payment of bribes by Defendants and other co-conspirators after March 1996 pursuant to Rule 404(b), but shall defer judgment until trial as to whether it should be excluded under Federal Rule of Evidence 403.

## B.  Evidence of Possession of Weapons

The Government intends to prove at trial that in order for the DTO to effectively run its operation, Defendants and co-conspirators possessed weapons that enabled them to ward off competition, protect the cocaine, and maintain stability within the DTO.  Govt.'s Mot. at 3.  The Government further intends to prove that Defendants were leaders of this operation.  *Id.*

To prove these facts, the Government intends to introduce evidence that in February 1999, Defendant Eliu was arrested with multiple firearms and weapons, including AK-47s, M-16s, and submachine guns, which were used and going to be used to protect the cocaine shipments for the DTO and Eliu.  *Id.* at 5.  The Government further intends to introduce

---

[4] The Court notes that where courts have admitted evidence of bribes as intrinsic evidence of a charged criminal venture, such bribes have frequently been made by or on behalf of the defendants themselves as direct evidence of the defendants' involvement in the criminal venture. *See, e.g.*, *Senffner*, 280 F.3d at 765.  Accordingly, in this case, it appears that evidence of bribes made by co-conspirators, absent a demonstrated connection to Defendants, may be more difficult to prove as direct evidence of an "act that is part of the charged offense" or "uncharged acts performed contemporaneously with the charged crime."  *Bowie*, 232 F.3d at 929.

evidence, through the testimony of cooperating witnesses, that (1) Defendants and members of

the DTO routinely carried firearms for their own protection from rival narcotics traffickers and to

protect the cocaine for the DTO in furtherance of the conspiracy and (2) Defendants were always

surrounded by heavily-armed security bearing rifles, numerous magazines of ammunition, and

machine guns.  *Id.* at 5-6.  Finally, the Government intends to introduce evidence, through the

testimony of cooperating witnesses, that Defendants' brother and co-defendant, Harold

Lorenzana, discussed possessing rockets in order to shoot down law enforcement aircraft and

avoid arrest or capture, and to disrupt operations directed at Defendants or other members of the

DTO that would have interfered with their continued participation in the charged conspiracy.  Id.

at 6.

　　　　The Government argues that Defendants' possession and use of weapons demonstrate

their membership within the DTO, as well as their roles as leaders within the conspiracy.

Govt.'s Mot. at 12.  The Government cites *United States v. Gooch*, a case charging the defendant

with participation in narcotics and racketeering conspiracies run by a group known as the "M

Street Crew," in which the court admitted evidence of various uncharged incidents that took

place during the time frame of the relevant conspiracies.  *See United States v. Gooch*, 514 F.

Supp. 2d 63, 70 (D.D.C. 2007), *aff'd*, 665 F.3d 1318 (D.C. Cir. 2012).  Specifically, the court in

*Gooch* admitted evidence of defendant's uncharged assault on a police officer which occurred

while the defendant's co-conspirators freed him from an attempted arrest, because such evidence

"demonstrated [the defendant's] position in the M Street Crew and was intrinsic to the charged

conspiracies."  *Id.*

　　　　Courts in this circuit have, on numerous occasions, found that a defendant's possession

and use of weapons constitute contemporaneous conduct designed to facilitate and advance the

goals of a charged conspiracy to traffic narcotics. Accordingly, the Court agrees that Defendant Eliu's arrest in February 1999, where he possessed multiple firearms and weapons, including AK-47s, M-16s, and submachine guns, constitutes direct evidence of the manner and means used by Defendant Eliu to facilitate the narcotics conspiracy, and demonstrates his role as a leader in the alleged conspiracy. *See Gooch*, 514 F. Supp. 2d at 70, *aff'd*, 665 F.3d 1318; *see also Lerma-Plata*, 919 F. Supp. 2d at 153; *United States v. Edwards*, 889 F. Supp. 2d 47, 50-51 (D.D.C. 2012). Defendants' alleged possession and use of weapons, as well as their reliance on heavily-armed security, are part and parcel to the alleged drug trafficking operation and constitute contemporaneous conduct designed to facilitate and advance the goals of the charged conspiracy. *Cf. United States v. Davis*, 402 F. Supp. 2d 252, 262 (D.D.C. 2005); *see also Gooch*, 514 F. Supp. 2d at 70, *aff'd*, 665 F.3d 1318; *Lerma-Plata*, 919 F. Supp. 2d at 153; *Edwards*, 889 F. Supp. 2d at 50-51. Accordingly, upon review of the present record, the Court finds that the following evidence shall be admissible as intrinsic evidence: (1) evidence of Defendant Eliu's arrest in February 1999; (2) evidence of Defendants' use and possession of firearms during the alleged conspiracy; and (3) evidence of Defendants' use of heavily-armed security during the alleged conspiracy.

The Court notes that the Government has not specified the timeframe during which the Government intends to prove the Defendants' use and possession of firearms, as well as Defendants' use of heavily-armed security. Therefore, to the extent that the Government intends to introduce evidence of Defendants' use of firearms and security outside the time frame of the alleged conspiracy, such evidence shall not be considered evidence intrinsic to the charged conspiracy, but shall be conditionally admitted under Rule 404(b). The Court shall defer

judgment until trial as to whether such evidence, if any, should be excluded under Federal Rule of Evidence 403.

As to the evidence relating to Harold Lorenzana's possession and use of rockets, the Court cannot make a determination, based on the record at this time, as to whether such evidence can be considered intrinsic to the charge of conspiracy. It is not clear to the Court at this time that Harold Lorenzana's possession and use of rockets, without any stated connection to Defendants' involvement in the alleged conspiracy, would constitute direct evidence of an "act that is part of the charged offense" or "uncharged acts performed contemporaneously with the charged crime." *Bowie*, 232 F.3d at 929. The Court observes that as the parties proceed with discovery, the record may develop to show that such evidence is "closely related to the conspiracy" and thereby amounts to evidence intrinsic to the conspiracy. However, the Court cannot make such a determination based on its review of the record currently before it.

Finally, the Court finds that evidence relating to Harold Lorenzana's possession and use of rockets to shoot down law enforcement aircraft constitutes "other acts" evidence admissible under Rule 404(b). Courts in this circuit have repeatedly allowed evidence of violence and weapons pursuant to Rule 404(b) to show non-propensity purposes. *See, e.g.*, *United States v. Burwell*, 642 F.3d 1062, 1067 (D.C. Cir. 2011); *United States v. Morrow*, 2005 WL 3159572, at *78-*82 (D.D.C. Apr. 7, 2005). This evidence explains the circumstances around the alleged conspiracy by providing content and background to the jury. Such "completing the story" evidence, although not admissible as intrinsic evidence, may properly be admitted under 404(b) for any non-propensity purpose. *See Bowie*, 232 F.3d at 929. Accordingly, the Court shall conditionally admit evidence relating to Harold Lorenzana's possession and use of rockets, but

14

shall defer judgment until trial as to whether it should be excluded under Federal Rule of Evidence 403.

**C.  Evidence of Money Laundering**

The Government intends to prove at trial that Defendants and their co-conspirators were involved in moving millions of dollars that constituted payment for and proceeds from the cocaine trafficking.  Govt.'s Mot. at 4.  The Government intends to show that such acts were vital in promoting the drug trafficking and corruption activities of the DTO, which required the substantial movement and laundering of money in the form of narcotics payments and proceeds.  *Id.*

To prove these facts, the Government intends to introduce two types of evidence.  First the Government intends to introduce evidence related to drug ledgers seized by Guatemalan officials on April 2, 2003, after Guatemalan officials executed search warrants at two residences in Zona 14, Guatemala City.  *Id.* at 6.  The Government alleges that officials seized approximately $14 million dollars in U.S. currency during this search.  *Id.*  According to the Government, the search ledgers contain references to several members of Defendants' DTO, including Defendants.  *Id.*  The Government alleges that payments reflected in these drug ledgers show that various members of the DTO, including co-conspirators and Defendants' family members, made payments to or were paid for cocaine trafficking activities in U.S. dollars.  *Id.* According to the Government, the drug ledgers contain dates demonstrating that many of these payments were made during 2001.  *Id.*

The Government also intends to introduce evidence, through testimony of cooperating witnesses, that the proceeds from and funds for drug trafficking by Defendants, co-conspirators, family members, and the DTO, were being laundered from the U.S. to Mexico, Guatemala, and

Colombia. *Id.* According to the Government, Defendants attempted to launder these drug trafficking funds by investing and layering them in legitimate ventures, such as cattle, farming, and other legitimate business sectors. *Id.* at 6-7.

The Government, citing several cases decided in this circuit, argue that the drug ledgers found inside the residences in Guatemala City reveal that Defendants conspired with others to launder money, which is inextricably intertwined with the charged drug-trafficking conspiracy. *Id.* at 13. The recorded transactions, argues the Government, are contemporaneous with the DTO's operation and distribution of cocaine, and that Defendants' alleged laundering activities are intrinsic to the charged drug conspiracy as contemporaneous acts that facilitated the commission of the charged offense. *Id.*

The case law in this circuit supports the Government's position, that evidence of Defendants' efforts to launder money should be considered evidence intrinsic to the charge of conspiracy. As the D.C. Circuit noted in *United States v. Tarantino*, 846 F.2d 1384, 1393, (D.C. Cir. 1988), the "laundering of funds [is] a part of the plan to distribute cocaine; the conspirators . . . well [know] that the cocaine money [has] to be 'cleaned up' to be useful to them." *Id.* The financing of drug transactions and the movement of money constitute overt acts performed contemporaneously with, and directly in furtherance of, the charged conspiracy. *See United States v. Sitzmann*, 74 F. Supp. 3d 96, 120 (D.D.C. 2014) (admitting evidence of money laundering as evidence intrinsic of the charged conspiracy to traffic narcotics). Accordingly, upon review of the present record, the Court finds that the following evidence shall be admissible as intrinsic evidence: (1) evidence of the drug ledgers seized by Guatemalan officials on April 2, 2003 and (2) evidence, through the testimony of cooperating witnesses, that proceeds from and

funds for drug trafficking were being laundered from the U.S. to Mexico, Guatemala, and Colombia, during the time period of the alleged conspiracy.

The Court notes that the Government has not specified the timeframe during which the Government intends to prove these money laundering activities.  Therefore, to the extent that the Government intends to introduce evidence of money laundering outside the time frame of the alleged conspiracy, such evidence shall not be considered evidence intrinsic to the charged conspiracy, but shall be conditionally admitted under Rule 404(b).  The Court shall defer judgment until trial as to whether such evidence, if any, should be excluded under Federal Rule of Evidence 403.

## IV. CONCLUSION

For the foregoing reasons, the Government's Motion to Admit Other Crimes Evidence at Trial is GRANTED-IN-PART and HELD-IN-ABEYANCE-IN-PART.  Specifically, upon close review of the record currently before the Court, the Court finds that the following evidence shall be admitted evidence as evidence intrinsic of the alleged conspiracy:

- evidence of Defendant Eliu's arrest in February 1999 where he possessed multiple firearms and weapons, including AK-47s, M-16s, and submachine guns;
- evidence of Defendants' use and possession of firearms during the time period of the alleged conspiracy;
- evidence of Defendants' use of heavily-armed security during the time period of the alleged conspiracy;
- evidence relating to the drug ledgers seized by Guatemalan officials on April 2, 2003; and
- evidence, through the testimony of cooperating witnesses, that proceeds from and funds for drug trafficking were being laundered from the U.S. to Mexico, Guatemala, and Colombia, during the time period of the alleged conspiracy.

Upon close review of the record currently before the Court, the Court further finds that the following evidence shall be conditionally admitted as "other acts" evidence under Rule

404(b).  The Court shall defer judgment until trial as to whether such evidence should be

excluded under Federal Rule of Evidence 403.

- evidence of bribes paid by Defendants and other co-conspirators outside the time frame of the alleged conspiracy;
- evidence of bribes paid by Defendants and other co-conspirators during the alleged conspiracy;
- evidence of Defendants' use of firearms and armed security, outside the time frame of the alleged conspiracy;
- evidence relating to co-Defendant Harold Lorenzana's possession and use of rockets to shoot down law enforcement aircraft; and
- evidence, through the testimony of cooperating witnesses, that proceeds from and funds for drug trafficking were being laundered from the U.S. to Mexico, Guatemala, and Colombia, outside the time period of the alleged conspiracy.

An appropriate Order accompanies this Memorandum Opinion.

Dated: October 30, 2015

_____/s/_____

COLLEEN KOLLAR-KOTELLY
United States District Judge