IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - -x
THE UNITED STATES OF AMERICA,

          Plaintiff,

vs.

ELIU ELIXANDER LORENZANA-CORDON
and WALDEMAR LORENZANA-CORDON,
        Defendants.
- - - - - - - - - - - - - - - -x

Criminal Action No.
1:03-cr-00331-CKK
Tuesday, March 22, 2016
11:55 a.m.

_____

TRANSCRIPT OF JURY TRIAL
HELD BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:

For the United States:   **MICHAEL NICHOLAS LANG, ESQ.**
                         **EMILY RACHEL COHEN, ESQ.**
                         **STEPHEN A. SOLA, ESQ.**
                         **UNITED STATES DEPARTMENT OF JUSTICE,**
                         145 N Street NE
                         Washington, DC 20530
                         (202) 616-0381

For the Defendant Eliu
Lorenzana-Cordon:   **MANUEL J. RETURETA, ESQ.**
                         **RETURETA & WASSEM, P.L.L.C.**
                         300 New Jersey Avenue, NW, Suite 900
                         Washington, DC 20001
                         (202) 450-6119

                         **BARRY COBURN, ESQ.**
                         **MARC J. EISENSTEIN, ESQ.**
                         **COBURN & GREENBAUM, PLLC**
                         1710 Rhode Island Avenue, NW
                         Washington, DC 20036
                         (202) 643-9472

(APPEARANCES CONTINUED ON NEXT PAGE)

```
 1     APPEARANCES (CONTINUED):

 2     For the Defendant Waldemar    RON EARNEST, ESQ.
       Lorenzana-Cordon:            LAW OFFICES OF RON EARNEST
 3                                   6801 Kenilworth Avenue,
                                     Suite 120
 4                                   Riverdale, MD 20737
                                     (240) 401-5277
 5

 6     Interpreters:                Angeles Estrada
                                     Erin Gaston-Owen
 7                                   Teresa Salazar

 8

 9     Court Reporter:              Lisa A. Moreira, RDR, CRR
                                     Official Court Reporter
10                                   U.S. Courthouse, Room 6718
                                     333 Constitution Avenue, NW
11                                   Washington, DC  20001
                                     202-354-3187

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

```
 1                      P R O C E E D I N G S
 2            THE COURT:  All right.  Good morning, everyone.
 3            IN UNISON:  Good morning.
 4            THE COURT:  All right.  Can we -- we need to get
 5   moving, all right, so you can talk to your clients in a
 6   minute.  We need to put stuff on the record.  You all didn't
 7   get here very quickly.
 8            All right.  Let's swear in the interpreter and get
 9   moving.
10            (Interpreter, Teresa Salazar, sworn)
11            THE COURT:  All right.  The jury started
12   deliberating at 10:15.  That's when we got the last juror.
13            At 10:35 they sent a note, "The jury's requesting
14   a flip chart, easel, and various colored markers."
15            I believe we have complied with that request.  Is
16   that correct, Ms. Patterson?
17            THE COURTROOM DEPUTY:  Yes.
18            THE COURT:  Okay.  So that was done some time ago.
19            The next of it is, "Message to the Judge:  The
20   jury is asking for the transcripts for Byron Linares-Cordon,
21   Otto Herrera-Garcia, Walter Montejo Merida, Sebastiana
22   Cotton Vasquez, and Marllory Chacon-Rossell, and Special
23   Agent Michael Johnson.
24            Now, I believe we called you at the latest at
25   10:45.  It took a while to get you here because I wanted to
```

1    discuss this thing as opposed to having you sort of wait

2    around because we called shortly after, you know, we got the

3    note at 10:35.  We came into the courtroom to get moving on

4    the other, and I told Ms. Patterson to make phone calls to

5    you all to get you in so we could talk to the note --

6    discuss the note.

7           All right.  In terms of -- you should just be

8    aware, it's discretionary on the part of the Court as to

9    whether to do it.  The *Wilson* case, which is a 1998 case,

10   160 F 3d. 732, is the seminal case in this jurisdiction, and

11   it has been cited with approval in a 2013 case, *United*

12   *States v. Miller*, which is 738 F 3d. 361.

13          Now, it went on for -- the judge made some

14   comments and directed testimony and it created problems,

15   but -- and in the *Miller* case it cites back to the *Wilson*

16   case in terms of, you know, with approval.  And the *Wilson*

17   case basically indicates during deliberations sent a note

18   requesting transcripts of four government witnesses.  You'd

19   have to redact the transcript of the witnesses taking out

20   bench conferences.  Obviously defense counsel would have an

21   opportunity to look at it to make sure there wasn't any

22   issue.

23          There is an instruction that should be provided as

24   well, something to the effect of not giving weight away just

25   because you happen to have the transcripts reminding that

1    it's their collective recollection of all of the evidence

2    presented.  There is some language of not to substitute the

3    transcript for the memory or assessment of credibility, make

4    sure they weigh all of the evidence, and transcript isn't

5    authoritative and will not prevail over their memories of

6    all of the evidence, something to that effect.

7            Now, in terms of looking at it, what we had is --

8    they've requested the testimony of six witnesses out of 19.

9    We have 64 hours of only testimony.  I've gone to the

10   trouble of going through the transcripts and figuring out

11   breaks, et cetera.  So if you exclude openings, closings,

12   and jury instructions, there's 64 hours of testimony.  So

13   six witnesses is not, you know, as overwhelming as if

14   they're asking for the whole trial, and they have not asked

15   for all of the individuals.

16           I've talked to -- we all have transcripts so this

17   would not be an issue.  I mean, if we didn't have the

18   transcripts, there would be a problem, obviously, in terms

19   of doing it.

20           Lisa, the court reporter that's here who did the

21   afternoons, has indicated that it probably would take her an

22   hour to remove any of the bench conferences and then you

23   would -- counsel would have an opportunity to review it to

24   make sure there's no other issue.

25           Ms. Foradori is not around.  We would have to -- I

1    have them.  What I would do is either black them out or

2    do -- you know, make Xerox copies of them excluding it if we

3    don't get her in time.

4           My understanding is Cathryn Jones is in the

5    courthouse.  We just haven't gotten ahold of her.  She had

6    done Byron Linares.

7           If you want to look at the cases, you can.

8    There's a whole series of other ones, but I think frankly

9    the *Wilson* case is the one that everybody goes back to cite

10   to.  You never send it back without having an instruction

11   along with it.

12          MR. SOLA:  Your Honor, could you give us the cite

13   for *Wilson* again, 160 F. 3d --

14          THE COURT:  160 F. 3d 732.  It's a 1998 decision,

15   but it's -- again, it was cited in 2013 with approval.  It's

16   basically a -- I mean, the things that you would weigh is

17   where there is -- you know, the adherent is undue emphasis

18   on the testimony and taken out of context, so that's why you

19   would give the instruction to indicate.  And I can, you

20   know, basically -- I mean, I can put something together that

21   includes that they can't take it out of context.  They need

22   to rely on the memory of all of the evidence, consider

23   credibility, et cetera, et cetera, the things that I just

24   talked about from looking at other cases, and I have done

25   this instruction before.

1          So let me hear from the government first and then

2    defense counsel.

3          MR. LANG:  Your Honor, we would like to review

4    *Wilson* immediately, but by the Court's representations, it

5    sounds like we would be very much in support of the Court's

6    position.

7          THE COURT:  All right.  Let me give you time to

8    take a look at it, and -- both the D.C. Court of Appeals and

9    this Court has done it, but I've focused on the Court here,

10    and I looked for the latest cases.

11          I have a bunch of other cases from other circuits

12    as well that hold it.  But *Wilson* seems to be the seminal

13    case.

14          Mr. Retureta.

15          MR. RETURETA:  Good morning, Your Honor.  Good

16    afternoon now.

17          THE COURT:  Good morning.

18          MR. RETURETA:  Your Honor, we have grave concerns

19    with what they're asking for.  They're essentially asking

20    for a new trial.  While they're asking for a total of --

21          THE COURT:  Six.

22          MR. RETURETA:  Five of those witnesses are the

23    cooperating core of what the government's case is; so while

24    they ask for those five witnesses out of -- I'm not sure how

25    many witnesses there were.

```
 1              THE COURT:  19.

 2              MR. RETURETA:  Those witnesses -- I'm just running

 3    down the list here -- comprise a big chunk of what this case

 4    is.  I think the Court correctly noted the concern that

 5    Wilson had is that this may accord undue emphasis on the

 6    testimony out of context; and that, coupled with what we now

 7    know they informed us of yesterday, is of great concern.

 8              I think -- when I first learned of this, I was

 9    trying to recall whether the Court had stated that

10    transcripts would not go back.

11              THE COURT:  I have said nothing about transcripts

12    one way or the other.  I think the -- I think my

13    introduction is for them not to count on getting a

14    transcript because it requires time to prepare.  I said

15    nothing about their getting one or not getting one.  And

16    part of the reason for doing that is I did not want them to

17    start the case realizing we were taking transcripts and not

18    listen --

19              MR. RETURETA:  And pay attention.

20              THE COURT:  -- and pay attention thinking we could

21    just ask for the whole transcript, and that's it.  So -- but

22    I didn't say -- I purposefully said nothing one way or the

23    other knowing that we actually could potentially produce

24    them because we have the transcripts.  In many instances we

25    don't.  We wouldn't have like a final one, but we actually
```

1    have the -- I mean, they've been finalized by the court

2    reporter.  You'd still have to take information, you know,

3    bench conferences, out of it.  As I've indicated, I think

4    for most of it it will not take long to do that.

5          I would note that in terms of the -- I've had an

6    opportunity -- we did a flowchart going through the

7    transcripts to figure out how much time the trial actually

8    took starting with openings through the jury instructions,

9    and it was 71 hours of trial time, and they spent 12 hours

10   and 50 minutes before they sent their note yesterday so I

11   would certainly have indicated it wasn't enough time.

12         It was, I believe -- I actually have the figure

13   here somewhere.  Hold on.

14         Basically it was 18 percent of the amount of time

15   they spent in trial deliberating; so I think from that

16   perspective they're obviously wanting to look through

17   certain testimony.

18         It's not all of the cooperators.  It's only six,

19   and, as a practical matter, I think you get direct and cross

20   so it's not like you're not going to get -- you'll have the

21   whole thing.  The cross is what would specifically respond

22   to whatever weaknesses they had.  I don't know if there's

23   some other witness you think you would throw into the pile

24   that would somehow say something inconsistent with them.

25         MR. RETURETA:  No, Your Honor.  I think -- I'm

1      sorry.

2               THE COURT:  Go ahead.  No.

3               MR. RETURETA:  I think it's a problem with what

4      they're asking.  I think -- even though it is not all of the

5      cooperators, the only cooperators that are excluded there

6      are the captain or Otto's little brother or older brother,

7      and it is the core of the government's case.

8               THE COURT:  Well, it's the core of the

9      government's and your case.  Your defense was the cross-

10     examination of these witnesses in terms of bringing out --

11     and certainly your closing arguments pointed out the

12     weaknesses.  And I would note they don't have Mr. Mahoney

13     here -- pointed out the weaknesses of, you know, what they

14     had to say.

15              So they certainly have that in the back of their

16     minds, I assume, in looking at that.  I mean, that was --

17     that is your defense.  I mean, it is a large portion of

18     their case.  They didn't ask for some of the corroborating

19     witnesses, which were the foreign people, but I think that,

20     you know, it is the government and the defense case.  Your

21     defense case is what they didn't say, what credibility.

22              I would fashion something in terms of an

23     instruction to them that included the fact that they have

24     to -- the fact that what they're getting here, they still

25     need to remember all of the evidence, not take it out of

1   context; rely on their memory of all of the evidence, and

2   that this isn't authoritative; and more importantly, that

3   they need to take into account the credibility issue.

4          So, I mean, there's a bunch of cases that tell you

5   what instructions you give, and I would put something

6   together and make it clear.  They still need credibility;

7   they still need to consider everything else; and they still

8   need to do -- you know, to consider it in context of

9   everything.

10          But I think it's basically the government and the

11   defense case on particular -- on particular -- you know,

12   particular evidence.  I mean, if you were going to pick and

13   choose, I mean, this is to a large degree -- but it's not

14   all of the witnesses.  As I said, there are 19, and they are

15   requesting six; five, granted, are cooperators, and one is,

16   you know, a government attorney.  But it's got all your

17   materials for it, and I think, you know, the other issue is

18   how much of a delay there is in terms of putting it

19   together, which is something to consider.

20          MR. RETURETA:  That was my question, Your Honor.

21   Would they be presented all together at one time?  That

22   would be our preference.

23          THE COURT:  My inclination would be to put it

24   together, bring them out, give them an instruction, and then

25   give it to them; not do it piecemeal.

1          MR. RETURETA:  All at once.

2          THE COURT:  Yes.

3          MR. RETURETA:  Yes.

4          THE COURT:  Because I think the instruction must

5     fit the whole thing.  I don't think you give the instruction

6     each time, which doesn't make sense, and I don't want them

7     starting to -- they should get it all and figure out how

8     they want to look at it and who wants to look at it, which

9     is the other thing.

10          MR. RETURETA:  Your Honor, we would note our

11     objection.

12          THE COURT:  Okay.

13          MR. RETURETA:  We don't -- we think that the

14     response of the Court should be that their recollection

15     controls.  The request that they're making is much too broad

16     coupled with the fact that we now view Friday's note and

17     certainly yesterday's note as indications that they are

18     deadlocked.

19          THE COURT:  I think yesterday's note is clear.

20     Friday I don't.  I think they simply asked how long -- how

21     long are deliberations, which, you know -- in terms of how

22     long into the next week?  Is there a time frame?

23          A number of these people, you know, including one

24     who wishes to go off to Alaska to see his grandchildren.

25     So, you know, they may be asking if there's a limit that the

1    Court has.  A number of these people -- even the attorney,

2    for all I know, has never been a juror or in trial, for that

3    matter.

4            So, I mean, I don't know what their -- I

5    can't say their experience.  I don't view Friday as a

6    deadlock.  Certainly yesterday, absolutely.  But I have to

7    say that I think -- you know, I didn't tell them that it was

8    too short.

9            Since you mistakenly indicated it was coercive, I

10   decided to go along with it, but it's clear from the Red

11   Book instruction that it allows you to indicate the length

12   of time they've been deliberating and the fact that you're

13   not -- I took it inside.

14           MR. RETURETA:  Well, Your Honor, we were focusing

15   on the language that you had not deliberated long enough.

16           THE COURT:  Right.  But they -- you know, mine

17   is -- mine was a shorthand, frankly, for the longer

18   instruction.  If you looked at the one that the Red Book

19   has, it has very similar language.

20           I mean, I didn't give that, but we're not there.

21   Okay?  Let's deal with the issue we have now.

22           MR. RETURETA:  Right.

23           THE COURT:  I'm just saying to you clearly

24   yesterday they were deadlocked.  They now have decided to

25   resume discussions, and they obviously have some issues that

1    they wish to take a look at, I think, under the

2    circumstances, with the length of the time, and the fact

3    that they're willing to pursue reviewing evidence, as long

4    as we can do this expeditiously.

5           I've sent nothing back to them except the flip

6    charts so they don't have any answer about the -- you know,

7    the transcripts at this point.  They will be going to lunch

8    shortly.  My hope would be to come back after lunch and have

9    these ready.

10          MR. RETURETA:  Question, Your Honor.  What's the

11   flip chart?

12          THE COURT:  They wanted a flip chart.  You didn't

13   read the first part.

14          MR. RETURETA:  No, no, no, I read it.

15          THE COURT:  You flip it over.

16          MR. RETURETA:  I just didn't know what they were

17   talking about when they said the flip chart.

18          THE COURT:  No, they got that.  We answered that.

19   We didn't answer the other one.

20          MR. RETURETA:  That was the one we couldn't use.

21          THE COURT:  Right.  So, I mean, the other one, as

22   I said, I think, looking at *Wilson*, as long as there's an

23   instruction and we do not delay their waiting around to get

24   information.  And they appear to be willing to -- you know,

25   in most of these cases, they've had some problems, and then

1    they ask for transcripts frankly.

2            They've obviously -- some or all of them want to

3    review it.  As long as you do a good instruction that they

4    can't just focus on particular things -- there's still the

5    memory.  There's still the credibility.  They still have to

6    put everything into context.

7            And frankly, you know, your defense is in there

8    because your cross is in there and all your arguments you

9    made are all related to the cross-examination.

10           MR. RETURETA:  Can we have a copy of the Court's

11   instruction in advance?

12           THE COURT:  Absolutely.  I'm going to go back and

13   write it up.  And I'm going to let you look at the

14   transcripts before they go.

15           MR. RETURETA:  All right.

16           THE COURT:  I mean, I'm not going to send it back.

17   I want to make sure that there's nothing in there that there

18   is some concern about.

19           MR. RETURETA:  Thank you.

20           THE COURT:  We received final -- you know, they do

21   the real time, but they give you finals so from their

22   perspective they're final transcripts, but you should take a

23   look at them.

24           So over lunch, from now, I will put together an

25   instruction, give it to you for you to look at, and we will

1    work on getting something without delay, you know, to be

2    prepared so you can look at it, and we can potentially send

3    it back.

4           Mr. Earnest, I know you're objecting along with

5    Mr. Retureta.  Do you have an additional argument you want

6    to make?

7           MR. EARNEST:  Yes, Your Honor.

8           THE COURT:  Okay.

9           MR. EARNEST:  Or observation.  And that

10   observation is just that with these -- with this much

11   testimony read back, I make the observation that when you're

12   evaluating testimony, you're evaluating a live witness.  You

13   get to look at the demeanor.  You get to look at pauses,

14   hesitations.  And this is, of course, one of the drawbacks

15   of reading testimony back.

16           Thank you, Your Honor.

17           THE COURT:  That's true, which is why you would

18   potentially -- in this instruction you have to remind them

19   not to just read the transcript.  They have to consider

20   the -- you know, the credibility and, you know,

21   determinations that they would be making along with it.

22           But I'll put something together.  I mean, there's

23   a bunch of cases that have a series of different things, and

24   I will write all of it up.  But, you know, my suggestion is

25   to go -- you're going to go look at *Wilson*.  Let me at least

1    start this.  If it turns out that, you know, we wind up not

2    doing it, if *Wilson* says what I said it --

3           MR. LANG:  Your Honor, the government's had an

4    opportunity to review *Wilson*, certainly the pertinent parts,

5    and we are very much on point paying note to the fact that

6    the judge's instruction can pay attention to any of those

7    raised concerns.

8           THE COURT:  That's why, if you will wait here, I

9    will run back and put something together and put it out

10   while this one gets together with the rest.  And if I don't

11   have the others, we'll just go ahead.  We'll have the

12   transcripts and delete the materials.  Okay?

13          All right.  So let me take a break.

14          I don't know whether you want to have your clients

15   wait.  That's fine.  I don't have a problem, whatever you

16   want to do.

17          All right.  Then let me go back and do this, and

18   I'll come back out.

19          MR. RETURETA:  Thank you, Your Honor.

20          (Recess taken)

21          THE COURT:  Okay.  We have received the request --

22   just historically, we put the request for transcripts.  We

23   had a discussion about it.  We prepared an instruction to go

24   with it, and the court reporters have been working

25   diligently looking it over.  You have been looking over the

1    material.

2            I, after talking to you, sent a note back

3    indicating after lunch, in response to your request, we will

4    be providing you with the transcripts that you requested

5    with a jury instruction.  And this went back to them around

6    2:15, 2:30, somewhere in there.

7            At 2:45 we received a note, "Message to the Judge:

8    The jury has reached a unanimous verdict for both

9    defendants."

10           So my suggestion is the following.  It sort of

11   moots out the transcripts.  At least I think so.

12           I'm going to send a note back that says, "Dear

13   Jurors, you made an earlier request for transcripts of

14   several witnesses.  You have now sent a note that you have

15   reached a unanimous verdict as to each of the defendants.

16   Please indicate whether you have been able to reach a

17   verdict without the transcripts and are no longer requesting

18   them.  Yes.  No."

19           I mean, I think we should put that to rest.  It's

20   up to you, but I think we should ask to make sure that

21   that's really their decision.  If it is, I'll send it back.

22   If they say, "Yes, we've been able to reach it without the

23   transcripts," then we'll bring them in and take the verdict.

24           MR. RETURETA:  That's fine, Your Honor.

25           MR. LANG:  That's fine, Your Honor.

```
1            THE COURT:  Okay.  I noticed one little typo.
2            (Pause)
3            THE COURT:  Let me read them in.  We have some
4      other ones.  I did read in the one that requested the flip
5      chart and the transcripts.
6            At 11:01 they requested defense exhibits.  They
7      had evidently fallen down, and they didn't realize they had
8      them.
9            Is that correct, Ms. Patterson?
10            THE COURTROOM DEPUTY:  They had fallen down in the
11      closet.
12            THE COURT:  Okay.  So they got them at 11:07.
13            At 12:30 they took their lunch break.
14            And those are the only notes we got other than "we
15      now have reached a verdict."
16            And before lunch we said, "The Court will be
17      responding to your second request shortly."
18            After lunch we said that we were going to give
19      them the transcripts.
20            (Pause)
21            THE COURT:  And I thank you all for your patience.
22      I know the court reporters probably didn't get lunch.  I
23      know the lawyers didn't, and I know Teresa didn't, so I
24      appreciate your efforts to try and make this work.
25            MR. RETURETA:  Your Honor, question.
```

1          THE COURT:  Sure.

2          MR. RETURETA:  Once the verdict is in, the Court's

3     practice as to whether or not we're able to speak with the

4     jury?

5          THE COURT:  My practice is generally no.  They

6     will -- if they reach out to you, that's a different issue.

7     I obviously wouldn't stop that.

8          I've had too many issues with -- even if you are

9     done with the --

10          (Interruption)

11          THE COURT:  The answer is yes, so they evidently

12     went forward.

13          MR. RETURETA:  Oh, okay.

14          THE COURT:  We use jurors both here and, you know,

15     across the street, and other than finding out occasionally,

16     you know, is there something better about the experience

17     they could have received, I've generally stayed away.

18          If there's a mistrial, I have -- I feel

19     differently about it in terms of finding out what the split

20     is and allowing supervised discussion as to, you know, what

21     their concerns were so decisions can be made going forward.

22          But generally speaking, not that I don't trust the

23     two -- all of you to be -- ask appropriate questions, but

24     jurors are very strange about if they haven't -- you know,

25     they would still need to volunteer about being asked

1    questions, and I've gotten feedback from them, even when

2    I've supervised them, that they don't like it.

3            Even though they stayed voluntarily to talk about

4    it, they feel they're put to explain something.  They've

5    done their job.  That's sort of it.  Now, if they reach out

6    to you, you know, of course that's different.

7            So I generally have not been doing it.

8            So are we ready?

9            MR. RETURETA:  Yes, Your Honor.

10           THE COURT:  Okay.

11           (Jury enters courtroom)

12           THE COURT:  All right.  Good afternoon, Members of

13   the Jury.

14           JURY IN UNISON:  Good afternoon, Your Honor.

15           THE COURT:  All right.  I received a message from

16   your foreperson indicating "Message to the Judge:  The jury

17   has reached a unanimous verdict for both defendants."

18           So if I could ask the foreperson to rise, and if

19   you could indicate -- you're in Seat 14; is that correct?

20           THE FOREPERSON:  Yes, ma'am.

21           THE COURT:  You're going to need to speak up a

22   little bit.

23           What I'm going to do is I'm going to read from the

24   jury verdict form, Count I, and then I will ask you to give,

25   when I look up, what the unanimous verdict is, and then you

 1      should tell me what it is.  Okay?

 2              THE FOREPERSON:  Correct.

 3              THE COURT:  All right.  So we, the jury,

 4      unanimously finds as follows:

 5              Count 1.  Count 1 of the indictment charges that

 6      from in or about March 1996 and continuing thereafter up to

 7      and including April 2, 2009, the date of the filing of the

 8      indictment, the exact dates unknown, defendant -- I'm going

 9      to start with Eliu Lorenzana-Cordon -- was part of a

10      conspiracy to commit the following offenses.

11              One, to unlawfully, knowingly, and intentionally

12      import into the United States five kilograms or more of a

13      mixture and substance containing a detectable amount of

14      cocaine and/or, two, to manufacture or distribute five

15      kilograms or more of a mixture and substance containing a

16      detectable amount of cocaine knowing or intending that such

17      a substance would be unlawfully imported into the United

18      States.

19              And your verdict is...?

20              THE FOREPERSON:  Guilty, Your Honor.

21              THE COURT:  All right.  And there were then

22      questions relating to the amount of cocaine, so let me start

23      with the first question.

24              Does the jury unanimously find beyond a reasonable

25      doubt that the amount of cocaine -- and this is to Eliu

1      Lorenzana-Cordon -- was more than five kilograms, 5,000

2      grams, or more of a mixture or substance containing cocaine?

3      Yes or no?

4                THE FOREPERSON:  Yes, Your Honor.

5                THE COURT:  All right.  Then we would go no

6      further.

7                Let me move to Waldemar Lorenzana-Cordon.  So as

8      to Waldemar Lorenzana-Cordon, we the jury unanimously find

9      as follows:

10               Count 1 of the indictment charges that from in or

11     about March 1996 and continuing thereafter up to and

12     including April 2, 2009, the date of the filing of the

13     indictment, the exact dates unknown, Defendant Waldemar

14     Lorenzana-Cordon was part of a conspiracy to commit the

15     following offenses:

16               One, to unlawfully, knowingly, and intentionally

17     import into the United States five kilograms or more of a

18     mixture and substance containing a detectable amount of

19     cocaine and/or, two, to manufacture or distribute five

20     kilograms or more of a mixture and substance containing a

21     detectable amount of cocaine knowing or intending that such

22     a substance would be unlawfully imported into the United

23     States.

24               And your unanimous verdict is...?

25               THE FOREPERSON:  Guilty, Your Honor.

1          THE COURT:  Let me move, then, to the amount of

2     the drug, and this, again, relates to Waldemar

3     Lorenzana-Cordon.  Question 1:  Does the jury unanimously

4     find beyond a reasonable doubt that the amount of cocaine

5     was more than five kilograms, 5,000 grams, or more of a

6     mixture or substance containing cocaine?  Yes or no.

7          THE FOREPERSON:  Yes, Your Honor.

8          THE COURT:  All right.  Thank you.  You can sit

9     down.

10          Anything further from counsel?

11          MR. RETURETA:  Your Honor, may we ask for the jury

12     to be polled?

13          THE COURT:  All right.

14          Remember I explained to you that the parties are

15     entitled to make sure that this is a unanimous verdict, so

16     what I'm going to do is I'm going to call you by your seat

17     number, and I'm going to ask if you agree to the verdict as

18     stated by your foreperson.  And I'll ask as to each of the

19     defendants and move down by seat number.  All right?

20          So Juror No. 1, do you agree with the verdict as

21     stated by your foreperson as to Eliu Lorenzana-Cordon?

22          JUROR NO. 1:  I agree.

23          THE COURT:  And as to Waldemar Lorenzana-Cordon?

24          JUROR NO. 1:  I agree.

25          THE COURT:  All right.  Juror in Seat No. 3, do

1    you agree with the verdict as stated by your foreperson as

2    to Eliu Lorenzana-Cordon?

3                  JUROR NO. 3:  Yes.

4                  THE COURT:  As to Waldemar Lorenzana-Cordon?

5                  JUROR NO. 3:  Yes.

6                  THE COURT:  All right.  Juror in Seat No. 4, do

7    you agree with the verdict as stated by your foreperson as

8    to Eliu Lorenzana-Cordon?

9                  JUROR NO. 4:  Yes.

10                  THE COURT:  As to Waldemar Lorenzana-Cordon?

11                  JUROR NO. 4:  Yes.

12                  THE COURT:  Juror in Seat No. 5, you've heard the

13    verdict as stated by your foreperson.  Do you agree with the

14    verdict as to Eliu Lorenzana-Cordon?

15                  JUROR NO. 5:  Yes.

16                  THE COURT:  As to Waldemar Lorenzana-Cordon?

17                  JUROR NO. 5:  Yes.

18                  THE COURT:  Juror No. 6 -- in Seat No. 6, you've

19    heard the verdict as stated by your foreperson.  Do you

20    agree with that verdict as to Eliu Lorenzana-Cordon?

21                  JUROR NO. 6:  Yes.

22                  THE COURT:  As to Waldemar Lorenzana-Cordon?

23                  JUROR NO. 6:  Yes.

24                  THE COURT:  All right.  Juror in Seat No. 10,

25    you've heard the verdict -- correct?  Yes.  Yes, 10.

```
1                You've heard the verdict as stated by your

2        foreperson.  Do you agree with it as to Eliu Lorenzana-

3        Cordon?

4                JUROR NO. 10:  Yes.

5                THE COURT:  As to Waldemar Lorenzana-Cordon?

6                JUROR NO. 10:  Yes.

7                THE COURT:  Juror in Seat No. 11, you've heard the

8        verdict as stated by your foreperson.  Do you agree with the

9        verdict as to Eliu Lorenzana-Cordon?

10               JUROR NO. 11:  Yes, Your Honor.

11               THE COURT:  As to Waldemar Lorenzana-Cordon?

12               JUROR NO. 11:  Yes, Your Honor.

13               THE COURT:  All right.  Juror in Seat No. 12,

14       you've heard the verdict as stated by your foreperson.  Do

15       you agree with the verdict as to Eliu Lorenzana-Cordon?

16               JUROR NO. 12:  Yes, ma'am.

17               THE COURT:  As to Waldemar Lorenzana-Cordon?

18               JUROR NO. 12:  Yes, I do.

19               THE COURT:  Juror in Seat No. 13, do you agree

20       with the verdict as stated by your foreperson as to Eliu

21       Lorenzana-Cordon?

22               JUROR NO. 13:  Yes.

23               THE COURT:  As to Waldemar Lorenzana-Cordon?

24               JUROR NO. 13:  Yes.

25               THE COURT:  All right.  Juror in Seat No. 14,
```

1    you've indicated the verdict.  Do you agree with the verdict

2    that you've stated as to Eliu Lorenzana-Cordon?

3              JUROR NO. 14:  Yes, Your Honor.

4              THE COURT:  As to Waldemar Lorenzana-Cordon?

5              JUROR NO. 14:  Yes, Your Honor.

6              THE COURT:  All right.  Juror No. 15 in Seat No.

7    15.  I believe that's you, yes?  All right.  Juror in Seat

8    No. 15, you've heard the verdict as stated by your

9    foreperson.  Do you agree with it as to Eliu Lorenzana-

10   Cordon?

11             JUROR NO. 15:  Yes.

12             THE COURT:  As to Waldemar Lorenzana-Cordon?

13             JUROR NO. 15:  Yes.

14             THE COURT:  I'm sorry?  I missed it.

15             JUROR NO. 15:  Yes.

16             THE COURT:  Okay.  And juror in Seat No. 16,

17   you've heard the verdict as stated by your foreperson.  Do

18   you agree with it as to Eliu Lorenzana-Cordon?

19             JUROR NO. 16:  Yes.

20             THE COURT:  As to Waldemar Lorenzana-Cordon?

21             JUROR NO. 16:  Yes.

22             THE COURT:  I'm sorry?  I missed it.

23             JUROR NO. 16:  Yes.

24             THE COURT:  All right.  Anything further from

25   either counsel?

```
 1            MR. RETURETA:  No, Your Honor.

 2            MR. EARNEST:  No, Your Honor.

 3            THE COURT:  I do want to thank you.  I know --

 4    although it was shorter than we said, it still was a long

 5    time.  I know for many of you you had other responsibilities

 6    that you've had to shift around, and it's inconvenient for

 7    all of you.  But you've been very attentive in terms of

 8    throughout the trial, and I very much appreciate your taking

 9    the time.  It's not an easy job, but I thank you for your

10    service.

11            So you're excused at this time.  What you should

12    do is pull out your notes, if you haven't already, and give

13    them to Ms. Patterson.  We will shred them, and that will be

14    the end of them.

15            JUROR:  I was going to say, everything's on the

16    table.

17            THE COURT:  All right.  Then we're all set.  We'll

18    notify the jury office that your service is completed.

19    Thank you very much.  Have a good day, and take care of

20    yourselves.

21            (Jury exits courtroom)

22            THE COURT:  All right.  Well, no hesitation.

23            Okay.  I do want to thank the court reporter

24    that's here, Lisa Moreira -- I'm probably not pronouncing it

25    right -- and Lisa Foradori, and I will thank Cathryn Jones
```

1    for diligently coming back and working hard on these

2    transcripts to try and get them together.  And ultimately we

3    evidently did not need them, but I do want to thank them.

4           So at this point we should be setting a date for

5    presumably a presentence report, memorandum in aid of

6    sentencing, and a sentencing date.  We'll wait a few moments

7    for Ms. Patterson.

8           I think June 17th will probably work, or I might

9    give them a little bit more time because they'll do them

10    probably around the same time.  So let me figure out...

11           Okay.  I'm going to make it June 20th.  They

12    usually give it to the same probation officer to do so that

13    they would complete it.

14           And then the question in terms of your memorandum

15    in aid of sentencing is would you want to do them, you know,

16    with the government first, then you?  Do you want to do them

17    at the same time with an opportunity to respond?

18           MR. RETURETA:  I'm fine with at the same time,

19    Your Honor, with response time.

20           THE COURT:  Okay.  So June 20th is when they would

21    be coming -- the presentence report will come to me.  You

22    obviously would have seen it before that.

23           When do you want, after that, to file your

24    memorandum in aid of sentencing?  If you want to confer

25    quick between the three of you, that's fine.

1          So we've chosen the presentence report for both on

2     June 20th, which is more than the 70 days, in order to make

3     sure they can get it finished.

4          MR. RETURETA:  Your Honor, if I may?  I have a

5     trial scheduled in July.  If we could kind of walk it

6     backwards and -- perhaps select a sentencing date in August

7     and then walk back the dates.

8          THE COURT:  Okay.  That's fine.  My only question

9     is when do you want your memo first?  Because we need a

10    memorandum filed.  I assume after June 20th is when I get

11    it.  You can do it like the following week, response the

12    following week, and we can set the sentencing in August?

13    There is one week that I can't do it, but I'm around

14    otherwise.

15         MR. RETURETA:  May I suggest, given the holiday

16    tucked in there, July 11th and July 18th as two dates?

17         THE COURT:  Okay.  Does that work for everybody?

18    Mr. Earnest?

19         MR. EARNEST:  Yes.

20         THE COURT:  Mr. Lang?

21         MR. LANG:  It's fine for the government, Your

22    Honor.

23         THE COURT:  So when are you looking for for the

24    date in August?

25         MR. RETURETA:  Your Honor, second week of August?

1                    THE COURT:  (To Ms. Patterson) Can you just look

2        and see when I'm not sitting?

3                    THE COURTROOM DEPUTY:  The week of August 22nd.

4                    THE COURT:  Is when I'm not around?

5                    I can do it any day on the week of August 15th.

6        Do other people have matters that --

7                    MR. RETURETA:  Your Honor, 15th, 16th?  Monday,

8        Tuesday?

9                    THE COURT:  That's fine.

10                    MR. LANG:  That's fine with the government, Your

11        Honor.

12                    THE COURT:  Okay.  August 16th, and if we would do

13        it at 9:30.

14                    MR. RETURETA:  Okay, Your Honor.

15                    THE COURT:  So the presentence report is June

16        20th.  What I would ask is that you -- obviously you need to

17        talk to probation.  They will -- assuming the defendants

18        want to say anything, you'll need interpreters.

19                    What I would ask is that if you have not made

20        objections or you have made objections, before they give

21        it to me on the 20th, you should make sure -- sometimes

22        nobody -- one side doesn't object, and then the other side

23        does; it gets changed, and the first side didn't see it.  So

24        make sure that you double-back and make sure that you know,

25        if there are objections, how they've been revolved so that

1    when you do your memorandum in aid of sentencing you can

2    address them.

3            But also, I want probation to have an opportunity

4    to respond, if there's an issue that's been raised in terms

5    of being unhappy about something.  So we just need to make

6    sure that if there are objections, that everybody has an

7    opportunity to respond to them before I get it.

8            And, Teresa, is that going to work for you all?

9            THE INTERPRETER:  Yes, Your Honor.

10           THE COURT:  Okay.  All right.  And I want to thank

11   you and your cohort of interpreters.  This has not been an

12   easy case between trying to interpret both for the

13   defendants as well as most of the witnesses, and I very much

14   appreciate it.

15           All right.  And the Marshals Service, of course,

16   for getting them in and out.  And counsel.

17           MR. RETURETA:  Thank you, Your Honor.

18           THE COURT:  So you're excused at this point.

19           MR. LANG:  Thank you, Your Honor.

20           THE COURT:  You should hang around for your

21   exhibits.  The exhibits go back.

22                   (Whereupon the hearing was

23                    concluded at 3:22 p.m.)

24

25

**CERTIFICATE OF OFFICIAL COURT REPORTER**

I, LISA A. MOREIRA, RDR, CRR, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 14th day of December, 2023.


/s/Lisa A. Moreira, RDR, CRR
Official Court Reporter
United States Courthouse
Room 6718
333 Constitution Avenue, NW
Washington, DC 20001