**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

ELIU ELIXANDER LORENZANA-
CORDON,
          Defendant/Petitioner.

**Criminal No. 03cr331-13 (CKK)
Civil Action No. 22-1490 (CKK)**

**MEMORANDUM OPINION**
(May 6, 2025)

Pending before the Court is Defendant/Petitioner Eliu Elixander Lorenzana-Cordon's

[1173] *pro se* Motion Under 28 U.S.C. Section 2255 to Vacate, Set Aside, or Correct Sentence by

a Person in Federal Custody.[1] Defendant/Petitioner Eliu Elixander Lorenzana-Cordon (hereinafter

"Defendant" or "Mr. Lorenzana-Cordon") argues that his sentence and conviction should be

vacated because his sentence was imposed in violation of his Sixth Amendment right to effective

counsel and violations of his Fourth, Fifth, and Sixth Amendment rights.  The Government

contends that because Defendant's claims lack merit, he is not entitled to any relief.  For the

reasons explained herein, Defendant's [1173] Motion shall be DENIED, and furthermore, the

Court finds further that no hearing on the motion is necessary.  A court shall grant a hearing to

---

[1] In connection with this Memorandum Opinion, the Court considered: (1) Defendant Eliu
Elixander Lorenzana-Cordon's [1173] *pro se* Motion Under 28 U.S.C. Section 2255 to Vacate,
Set Aside, or Correct Sentence by a Person in Federal Custody ("Def.'s Mot."), and the exhibits
attached thereto; (2) the Government's [1197] Opposition to Defendant's Motion for Relief
Pursuant to 28 U.S.C. §2255 ("Gov't Opp'n"); (3) Defendant's [1203] *pro se* Reply to the
Government's Response to Motion ("Def.'s Reply"); (4) Defendant's *pro se* Petition for Writ of
Habeas Corpus Pursuant to Title 28 U.S.C. §2241(c)(3) (filed as ECF No. 1 in Civil Action No.
24-2471); *see* Order, ECF No. 13 in that case, treating the Petition as a supplement to
Defendant's Motion in this case; and (5) the entire record in this case.

determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §2255(b). A separate Order accompanies this Memorandum Opinion.

## I. BACKGROUND

### A. Arrest and Conviction

On April 2, 2009, a federal grand jury assembled in this District returned a Third Superseding Indictment (the "Indictment") against Defendant and his co-defendants, charging them with one count of conspiracy to: (1) to import into the United States five kilograms or more of cocaine; and (2) to manufacture and distribute five kilograms or more of cocaine with the intent to unlawfully import it into the United States, in violation of 21 U.S.C. §§ 952(a), 959(a), 960(b)(1)(B)(ii), and 963. Indictment at 3-4 (noting that the scope of the conspiracy was 1996 through 2009). Defendant was extradited from Guatemala to the United States, and he had his initial appearance on May 1, 2015, where he was represented by his retained counsel, Manuel Retureta, Esq. *See* May 1, 2015 Minute Entry. After a five-week long jury trial, on March 22, 2016, Defendant and his brother [a co-defendant] were convicted on Count One. *See* Verdict Form, ECF No. 800. On April 4, 2016, Robert Cappell, Esq. entered his Notice of Appearance on behalf of Defendant, his brother, and his father (a co-defendant who had pleaded guilty to the Indictment). Notice of Appearance, ECF No. 807; *see also* Motion to Withdraw by Mr. Retureta, ECF No. 809 (granted by Order, ECF No. 813).

### B. Post-Conviction Motions

On June 11, 2016, Defendant filed his [833] Motion for Judgment of Acquittal, pursuant to Federal Rule of Criminal Procedure 29, or in the Alternative for a New Trial pursuant to Rule

33, which raised these grounds for relief: (1) insufficiency of the evidence with respect to specific intent; (2) improper admission of a prior conviction; and (3) improper variance from the Indictment because the Government failed to prove a single conspiracy. *See* Motion, ECF No. 833, at 5, 16, 24. On September 13, 2016, Defendant filed his [866] Revised Motion for Judgment of Acquittal and/or for a New Trial that included two additional claims for relief: (4) Defendant's extradition violated the rule of specialty because he was tried for an offense different from the one for which he was extradited; and (5) the Government constructively amended the Indictment by redacting several of his co-defendants' names from the Indictment. *See id.* at 29, 33.    Furthermore, Mr. Lorenzana-Cordon filed a Motion to Dismiss, arguing that there was no evidence of his criminal conduct after 2003, which was outside the statute of limitations of the Indictment, and that Guatemala extradited Mr. Lorenzana-Cordon solely for the conduct occurring between 1999 and 2003. *See* Motion to Dismiss, ECF No. 874, at 1-5.

On June 2, 2017, this Court issued its [931] Memorandum Opinion and Order denying Defendant's three pending motions.[2] The Court found that "the evidence [at trial] was sufficient to demonstrate the existence of a single conspiracy, and did not support the existence of multiple conspiracies," and, assuming *arguendo* that it had, Defendant showed no prejudice, and his claim would fail. *Id.* at 6-7 (finding also that omission of a multiple conspiracy jury instruction was therefore proper).[3]    Additionally, this Court rejected Defendant's claim that there was a

---

[2] *See United States v. Lorenzana-Cordon*, Crim. Action No. 03-cr-331-13, 14 (CKK), 2017 WL 11493918 (D.D.C. June 2, 2017).

[3] The Court noted that it had previously "issued a Memorandum Opinion and Order denying Defendants' Joint Defense Motion for Multiple Conspiracy Instruction explaining why it found that the record evidence did not support the existence of multiple conspiracies." Mem. Op. and Order, ECF No. 931, at 6 (referencing Memorandum Opinion and Order, ECF No. 762).

constructive amendment of the Indictment because the grand jury intended only to indict Defendant on a conspiracy with the Otto Herrera drug-trafficking organization ("DTO"), which ended in 2003. *Id.* at 9-10. The Court found that there "was no constructive amendment in this case for the fundamental reason that there was no deviation between the indictment and the proof at trial" [and] Defendant's premise that the "complete, unredacted indictment only charged Defendants with conspiring in the Otto Herrera DTO" was "not supported, and is indeed contradicted, by the plain language of the indictment." *Id.* at 10. Furthermore, "the removal [of some] names did not undercut the requirements of the Grand Jury Clause or result in a constructive amendment" as the "particular identity of each of Defendants' many co-conspirators was not a required element of the charges against Defendants." *Id.* at 12-13.

Regarding Defendant's rule of specialty argument, this Court rejected his claim that he was tried and convicted for an offense different from that for which he was extradited. *Id.* at 12-13. The Court concluded that Defendants were charged in the Indictment with "conspiring with individuals associated with the Otto Herrera DTO and also with 'other conspirators, both known and unknown' to the grand jury, from 1996 to 2009" and "[t]hose were the charges for which the government of Guatemala decided to grant extradition, and they were the charges for which Defendants faced trial." *Id.* at 14. The Court rejected also Defendant's sufficiency of the evidence and evidentiary claims, *id.* at 16-23. Finally, the Court denied Defendant's motion to dismiss – which asserted his statute of limitations claim – finding that such motion was untimely, *id.* at 24, and without merit, *id.* at 25, as there was extensive evidence of post-2003 acts in furtherance of the conspiracy.

On December 1, 2017, Defendant filed his [975] second Motion for a New Trial based

upon an alleged false statement made in affidavits which had been submitted in support of the Government's request for Defendant's extradition, *see*, *e.g.*, Drug Enforcement Administration Special Agent Stephen Fraga's Affidavit, ECF No. 866-1, at 11 (referencing a meeting), and on January 3, 2018, Defendant filed his [982] Second Motion to Reconsider the Denial of Defendant's Revised Motion for a Judgment of Acquittal and for a New Trial, based in part on the same grounds. Even though the Court found that both motions were untimely, the Court addressed the "merits of the key, discernable arguments that Defendant ha[d] raised[.]" Order, ECF No. 991, at 2. Namely, Defendant challenged a statement about the <u>date</u> of a meeting described in Stephen Fraga's Affidavit [and another affidavit], on grounds that one of the participants was incarcerated at that time and could not have been in attendance. As a preliminary matter, the Court noted that it had "reviewed all of the citations referenced by Defendant, and ha[d] found no material inconsistencies that would have any effect on Defendant's sentencing or his entitlement to a new trial or acquittal." *Id.* at 3 (noting that most of the material did not contain anything that would "arguably constitute an inconsistency"). Moreover, "[t]he only aspects of these affidavits that were *potentially* contradicted by trial testimony and warrant any discussion by the Court were statements in the affidavits that Defendant and his co-conspirators, including Brian Linares, met in Guatemala in "approximately" February 2004." *Id.* at 3-4 (internal citation omitted). This is because "Linares testified at trial that he was arrested on May 22, 2003 and incarcerated for fifteen or sixteen months." *Id.* at 4 (noting that if Linares' testimony is accepted, that means the meeting occurred at a different time or he was not a participant at that meeting).

The Court noted that Defendant's argument about the significance of this statement in the Fraga Affidavit failed "on multiple levels." *Id.* at 4. First, the Affidavit employed the word

5

"approximately" and therefore, it anticipated that the meeting could have occurred later and may not be "factually inaccurate." *Id.* Second, the Court found this issue "immaterial," concluding that "this minor mistake [was] not important to any legal or factual issue in this case" as the "only even vaguely important point about this meeting was that it took place between Defendant and his co-conspirators at some point after a major government raid" on the DTO in 2003. *Id.* Third, there was no showing that this statement was "knowingly and intentionally [false], or [made] with reckless disregard for the truth." *Id.* at 5. Accordingly, the Court denied both of Defendants' motions.

### C. Sentencing and Post-Sentencing Motions

Defendant was sentenced, on February 22, 2018, to a life term with credit for time served in Guatemala and the United States. *See* Judgment, ECF No. 998.[4] Defendant's judgment of conviction was affirmed by the United States Court of Appeals for the District of Columbia ("D.C. Circuit") on January 31, 2020, in *United States v. Lorenzana-Cordon*, 949 F.3d 1 (D.C. Cir. 2020), *rehearing en banc denied* (2020), and Defendant's petition for a writ of certiorari was denied in *United States v. Lorenzana-Cordon*, 141 S. Ct. 2688 (2021). More specifically, the D.C. Circuit considered and rejected the two grounds for appeal raised by Defendant, finding that the government's trial evidence did "[not] materially diverge" from the indictment, and that "even if a multiple conspiracies instruction was in order, its omission inflicted no prejudice." *Id.* at 3.

---

4 Post-Judgment, this Court addressed several additional motions by Defendant including a motion regarding unsealing a portion of the record in this case, ECF Nos. 1187, a motion for default, ECF No. 1192, a motion for bail, ECF No. 1207, and a motion for discovery, ECF No. 1215. Defendant's [1233] Motion for [an] In Camera Inspection of Sealed Documents is reliant on Defendant's argument that there is an alleged "constructive amendment of the indictment," Def.'s Mot., ECF No. 1233, at 2, and it will be addressed after this Memorandum Opinion and Order are issued.

After denial of certiorari, Defendant timely filed his pending *pro se* motion pursuant to 28 U.S.C. §2255, which is ripe for resolution. Considered with Defendant's §2255 motion is his Petition [for a writ of habeas corpus pursuant to 28 U.S.C. §2241], which asserts a claim regarding the doctrine of specialty. That Petition was initially filed by Mr. Lorenzana-Cordon in the United States District Court for the Central District of California, Western Division, but because the California District Court lacked jurisdiction, and because Defendant's Section 2255 motion was pending here, his case was transferred to this Court. *See* Civil Action No. 24-2471 (CKK). In connection with the transfer, the California District Court noted that the claim in Defendant's Petition could be treated as an amendment to the pending §2255 motion in this case, and this Court agreed with that assessment. *See* Memorandum Opinion and Order [*Lorenzana-Cordon v. Lammer*, Civil Action No. 24-2471], ECF No. 13, at 4 ("This Court agrees that the Petition asserting a claim regarding the doctrine of specialty may be treated as an amendment to the pending §2255 motion in Criminal Case No. 03-331-13.")[5] Accordingly, all arguments by Defendant in connection with both his Section 2255 Motion and his Section 2241 Petition are addressed herein.

---

[5] This Court denied Defendant's motion to transfer that case back to the California court, and Defendant has appealed from that decision. Notice of Appeal, ECF No. 14 (Civil Action No. 24-2471).

In the instant case, the Court previously denied Defendant leave to file a request to amend his Section 2255 motion, where Defendant indicated that he did "not intend to submit any new grounds" but instead sought to "clarify" some "grounds already presented." The reason for the denial was that the instant 2255 motion had already been fully briefed by the parties and was ripe for resolution, and no additional clarification was necessary.

## II. LEGAL STANDARD

### A. Habeas Claims

Under 28 U.S.C. §2255, a federal prisoner may file a motion to vacate, set aside or correct his sentence upon belief that the otherwise final sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or it otherwise subject to collateral attack." 28 U.S.C. §2255(a). A motion under Section 2255 is "an extraordinary remedy and not a substitute for a direct appeal." *Womack v. United States*, 396 F.2d 630, 631 (D.C. Cir. 1968); *see also United States v. Pollard*, 959 F.2d 1011, 1020 (D.C. Cir. 1992). "[T]o obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982); *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973). The petitioner has the burden of proof to demonstrate his right to such relief by a preponderance of the evidence. *United States v. Basu*, 881 F. Supp. 2d 1, 4 (D.D.C. 2012).

Section 2255 petitioners are, however, procedurally barred from collaterally raising certain claims. *Frady*, 456 U.S. at 167. For example, Section 2255 petitioners are barred from collaterally raising "any issue litigated and adjudicated on direct appeal, absent highly exceptional circumstances such as an intervening change in law." *Davis v. United States*, 417 U.S. 333, 342 (1974); *United States v. Horne*, 203 F.3d 53 (D.C. Cir. 2000). With few exceptions, a prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" because of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted.

*Bousley v. United States*, 523 U.S. 614, 622 (1998).

To demonstrate "cause," a defendant must prove that some "objective factor external to the defense" impeded efforts to raise an issue in trial or on direct appeal. *United States v. Moore*, 75 F. Supp. 3d 568, 573 (D.D.C. 2014) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To demonstrate "actual prejudice," a petitioner must show that errors at trial "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Moore*, 75 F. Supp. 3d at 572 (citing *Frady*, 456 U.S. at 170). At the very least, a petitioner must demonstrate that "there is a reasonable probability that, but for [the errors], the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, and *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)).

B. Ineffective Assistance of Counsel

"Where a petitioner raises claims of ineffective assistance of counsel in a §2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a §2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000) (citation omitted), *aff'd*, 22 Fed. App'x 3 (D.C. Cir. 2001). The Defendant must show: (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted). For the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential" and defendant must "overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (internal quotation marks and citation omitted). "The benchmark for judging any claim of

9

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. The Court must consider "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689.

Furthermore, the defendant must meet the second *Strickland* prong and "affirmatively prove prejudice." *Id.* at 693. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with [a] reasonable probability [defined as] a probability sufficient to undermine confidence in the outcome." *Id.* at 669. To find prejudice, the petitioner must show that there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks and citation omitted). An ineffective assistance of counsel claim is defeated if the defendant fails to demonstrate either prong.

### III. ANALYSIS OF CLAIMS

#### A. Ineffective Assistance of Counsel

Defendant presents four claims for ineffective assistance of counsel, namely, that: (1) trial counsel effectively waived a statute of limitations affirmative defense by "fail[ing] to file a timely motion to dismiss the indictment as untimely," Def.'s Mot., ECF No. 1173, at 12 [Ground Two]; (2) appellate counsel failed to argue that Defendant was prejudiced by the failure of trial counsel to give a multiple conspiracies jury instruction; *id.* at 17 [Ground Six]; (3) appellate counsel failed to raise that the admission of evidence outside the time frame of 1999-2003 amounted to a constructive amendment to the Indictment and a violation of the rule of specialty because

Guatemala extradited Mr. Lorenza-Cordon for conduct limited to this time frame; *id.* at 4-10 [Ground One]; and (4) appellate counsel failed to argue that Defendant's Fifth Amendment due process rights were violated because the extradition affidavit contained false statements and the Indictment was untimely, *id.* at 13 [Ground Three]. Each of these claims is addressed in turn.

    1. Defendant Alleges that his Trial Counsel was Ineffective for Failing to File a Timely Motion to Dismiss the Indictment

    Pursuant to 18 U.S.C. §3282(a), "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found, or the information is instituted within five years next after such offense shall have been committed." An assertion that there was a "defect in instituting the prosecution, including. . . preindictment delay," must be presented in a pre-trial motion, "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(ii). In the instant case, Mr. Lorenzana-Cordon asserts that his trial counsel provided ineffective assistance because he waived a statute of limitations affirmative defense by "fail[ing] to file a timely motion to dismiss the indictment as untimely pursuant to 18 U.S.C. [Section] 3282(a)." Def.'s Mot., ECF No. 1173, at 10. Defendant's argument is a reiteration of a statute of limitations argument made by his trial counsel in several post-conviction motions. The Court addressed this same argument in its [931] Memorandum Opinion and Order denying, *inter alia*, Defendant's motion for dismissal based on the statute of limitations. More specifically, through his second trial counsel, Defendant moved to dismiss the indictment as barred by the statute of limitations, claiming that the charged conspiracy ended on April 2, 2003, which was over five years before the Third Superseding Indictment was returned in 2009. *See generally* Def.'s Mot. for Dismissal, ECF No. 874. The Court found initially that

11

Defendant's motion for dismissal was untimely, because it was raised months after trial, and the statute of limitations argument was not jurisdictional and therefore may be waived. Mem. Op. and Order, ECF No. 931, at 24-25. However, because the Court was "striv[ing] to resolve disputes on their merits, the Court [ ] considered the arguments in Defendant's motion to dismiss based upon the statute of limitations." *Id.* at 25. The Court found that Defendant's argument was "premised on the idea that the conspiracy at issue [was] limited to the Otto Herrera DTO and that it ended in 2003," but that was an "erroneous" premise. *Id.,* see also Mem. Op. and Order, ECF No. 931, at 14 (discussing the Stephen Fraga affidavit in support of extradition, which discusses criminal conduct of Defendant as late as 2006). The Court noted that "the indictment charged Defendant with a conspiracy lasting until 2009, and extensive evidence was introduced at trial that Defendant committed acts in furtherance of that conspiracy well past 2003," and therefore, the motion to dismiss would "fail on the merits even if it were not untimely." *Id.* at 26.

Accordingly, Defendant cannot show any prejudice that resulted from trial counsel's failure to raise the statute of limitations argument in pre-trial motions, as the record in this case demonstrated that Defendant's criminal conduct extended beyond 2003, and beyond conspiring with Otto Herrera, and it was within the statute of limitations. Furthermore, the Court finds that there is no "reasonable probability that, but for [trial counsel's failure to make a timely motion to dismiss on this ground], the result of the proceeding would have been different." *Moore,* 75 F. Supp. 3d at 572 (citing *Strickland,* 466 U.S. at 694; *United States v. Dale,* 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)). Defendant's claim of ineffective assistance of counsel regarding the statute of limitations argument is therefore denied.

2. Defendant Alleges he was "Prejudiced" by Appellate Counsel's Failure to Argue that the Court should have given a Multiple Conspiracies Instruction

Mr. Lorenzana-Cordon's claim that he was prejudiced by this Court's denial of a "multiple conspiracies" instruction is grounded in an assertion that his appellate counsel failed to adequately argue [each of] the prejudice prongs in the test set forth in *United States v. Cross*, 766 F.3d 1, 5 (D.C. Cir. 2013), a case addressing the failure to issue a multiple conspiracy instruction. The Government contends however that Defendant does not demonstrate prejudice under *Strickland* because "he fails to demonstrate that his appellate counsel erred in how he raised and argued the multiple conspiracies claim on appeal or that the failure to argue the claim differently resulted in prejudice." Gov't. Opp'n, ECF No. 1197, at 13. The Government looks to the D.C. Circuit's ultimate ruling, noting that while it is accurate that Defendant's appellate counsel only argued one form of prejudice resulting from the trial court's failure to issue a multiple conspiracies instruction, "the D.C. Circuit addressed and rejected all three theories of prejudice." *Id.*, *see United States v. Lorenzana-Cordon*, 949 F.3d 1, 6-8 (D.C. Cir. 2020). Because the record shows that appellate counsel did argue prejudice and furthermore, that the D.C. Circuit comprehensively considered the prejudice prongs in *Cross* and found none, Defendant fails to demonstrate cause or prejudice pursuant to *Strickland*.

Moreover, the Government contends that, "Defendant seeks review of a procedurally defaulted claim" as this claim as to "[w]hether the trial court erred in not instructing the jury on multiple conspiracies was [already] raised and rejected on appeal." Gov't. Opp'n, ECF No. 1197, at 13. The Government notes that Section 2255 petitioners are barred from collaterally raising "any issue litigated and adjudicated on direct appeal, absent highly exceptional circumstances" which do not exist here, *Davis v. United States*, 417 U.S. 333, 342 (1974). The Government elects,

however, to address Defendant's ineffective assistance of counsel claim on the merits. *See* Gov't Opp'n, ECF No. 1197, at 14. The Government notes that this Court previously denied Defendant's pretrial motion for a multiple conspiracies' instruction because the "record evidence [did] not support the existence of multiple conspiracies" but instead demonstrated that the defendants "who are brothers, jointly led a single conspiracy, with a common goal" to transport cocaine from Colombia to Defendants' properties in Guatemala for temporary storage and ultimate distribution. *Id.* (internal citation omitted). The Government discusses also this Court's denial of Defendant's revised Rule 29 motion, following Defendant's conviction. *See* Gov't Opp'n, ECF No. 1197, at 14-15 (where the Court reaffirmed its prior decision and noted that the evidence at trial showed that the "conspirators shared a common goal, were interdependent, and overlapped with each other at least to some degree") (internal citations omitted).

The Government argues that "[a] single conspiracy is not transformed into multiple conspiracies merely by virtue of the fact that it may involve two or more phases or spheres of operation, so long as there is sufficient proof of mutual dependence and assistance." Gov't. Opp'n, *id.* at 15 (citing *United States v. Payne*, 591 F.3d 46, 61 (2d Cir. 2010) (citation omitted)). "Nor do . . . shifting emphases in the locale of operations necessarily convert a single conspiracy into multiple conspiracies." *Id.* (citing *United States v. Maldonado-Rivera*, 922 F. 2d 934, 963 (2d Cir. 1990)). And furthermore, "[i]t is often possible, especially with drug conspiracies, to divide a single conspiracy into sub-agreements," but this "does not . . . mean that more than one conspiracy exists." *Id.* (citing *United States v. Ghazaleh*, 58 F.3d 240, 245 (6th Cir. 1995)).

In sum, this Court finds that the record in this case does not support a multiple conspiracy instruction. *See* Mem. Op. and Order, ECF No. 762 (discussing this issue and denying relief);

Mem. Op. and Order, ECF No. 931, at 5-9 (same). Furthermore, appellate counsel did argue one prejudice prong of *Cross* on appeal, and any failure to argue the other two prongs did not result in prejudice as the appellate court addressed and rejected those prongs. Accordingly, Defendant's claim of ineffective assistance of counsel based on the multiple conspiracies instruction is procedurally barred as this multiple conspiracies instruction issue was litigated and adjudicated on direct appeal. The Court finds further that there is no "reasonable probability that, but for [the appellate attorney's failure to argue prejudice], the result of the proceeding would have been different." *Moore*, 754 F. Supp. 3d at 572 (citing *Strickland*, 466 U.S. at 694, and *United States v. Dale*, 140 F.3d 1054, 1056 n.3 (D.C. Cir. 1998)). Accordingly, Defendant's claim of ineffective assistance of counsel on this basis is denied.

   3.  Defendant Alleges that the Constructive Amendment of the Indictment Violates the Rule of Specialty

Defendant makes two arguments alleging that this case involves a violation of the rule of specialty, which "provides that 'once extradited, a person can be prosecuted only for those charges on which he was extradited.'" *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 206 (D.C. Cir. 2013) (quoting *United States v. Sensi*, 879 F.2d 888, 892 (D.C. Cir. 1989). Mr. Lorenzana-Cordon's rule of specialty arguments are set forth in his Motion, ECF No. 1173, at 4-10, and in his Petition for Habeas Corpus Pursuant to Title 28 §2241, which was filed with the California District Court and transferred to this Court. *See Lorenzana-Cordon v. Lammer*, Civil Action No. 24-2471 (CKK). In a Memorandum Opinion and Order docketed in that case, the Court noted that the Petition would be treated as a supplement to the Motion in the instant case. While Defendant's claim in his Petition regarding a violation of the rule of specialty does not involve a claim of ineffective assistance of counsel, it will be addressed in this section of the Memorandum Opinion,

as Defendant's other claim asserting a violation of the rule of specialty does allege ineffective assistance of counsel. Defendant's rule of specialty argument from his Petition is addressed first.

    a. Defendant Alleges that the Charge of Conspiracy Does Not Appear in the Extradition Treaty

In his Petition, Defendant alleges that the charge against him for conspiracy to traffic narcotics "is not a crime stipulated within the listed crimes of the [Extradition] Treaty," and the Treaty "prohibits trial or punishment for a crime not included within its listed crimes." Petition, ECF No. 1 (Civil Action No. 24-2471), at 1. Furthermore, Defendant argues that "[i]f the contracting parties wanted the conspiracy to be part of the listed crimes they would have include it[.]" *Id.* at 6. Mr. Lorenzana-Cordon concludes that he is therefore entitled to "immediate release." *Id.* at 4.

This Court disagrees with Mr. Lorenzana-Lima's argument that list of crimes or offenses for which persons may be extradited by Guatemala to the United States – included in the Extradition Treaty – does not include conspiracies to commit drug trafficking offenses. The Supplementary Convention to the Extradition Treaty Concluded Between the United States of America and the Republic of Guatemala on February 27, 1903 ("Supplementary Convention"), 1940 U.S.T. LEXIS 54, 8 Bevans 528 (effective Mar. 13, 1941), adds the following crimes and offenses to the list in the Extradition Treaty: "23. Violation of <u>the laws prohibiting or regulating the traffic in narcotics</u>, when the penalty to which violators are liable is one year's imprisonment or more." Def.'s Pet, ECF No. 1, Ex. A (emphasis added). The Court finds that on its fact, this language is broad enough to encompass conspiracy to commit narcotics trafficking, which is an offense punishable by more than one year's imprisonment.

16

Assuming *arguendo* that the language in the Supplementary Convention could be deemed unclear as to scope, the issue of interpretation of the scope of an extradition treaty was addressed by the D.C. Circuit in *United States v. Trabelsi*, 845 F.3d 1181 (D.C. Cir. 2017). In that case, the D.C. Circuit affirmed the denial of defendant's motion to dismiss the indictment, where the defendant alleged that his extradition from Belgium to the United States – on charges relating to alleged terroristic activity – violated the double jeopardy provision of the extradition treaty. The D.C. Circuit considered the Government's argument that the Court lacked jurisdiction to review the extradition because "[the court] must defer to Belgium's decision that the offenses charged in the indictment do not violate Article 5 or the Treaty," and defendant's counterargument that no deference was owed to Belgium's decision. *Trabelsi*, 845 F.3d at 1186. The D.C. Circuit determined that it did have jurisdiction to review the decision but indicated that such review would be "highly deferential." *Id.* The D.C. Circuit's analysis relied on the Second Circuit's approach in *United States v. Campbell*, 300 F.3d 202, 208-11 (2d Cir. 2002), as "instructive." *Trabelsi*, *id.* at 1188.

In *Campbell*, the defendant challenged his extradition from Costa Rica arguing that the firearms offenses for which he was extradited were not within the scope of the applicable extradition treaty, and therefore his extradition "violated the principle of specialty, under which "an extradited defendant may not be tried for a crime not enumerated in the applicable extradition treaty," *Trabelsi*, 845 F.3d at 1188 (quoting *Campbell,* 300 F.3d at 209). The D.C. Circuit found that:

> The Second Circuit disagreed, explaining that the question of whether an extradition treaty allows prosecution for a particular crime that is specified in the extradition request is a matter for the extraditing country to determine. As a result, the court interpret[ed] *Johnson v. Browne* to mean that . . . courts cannot second-guess another country's grant of

17

> extradition to the United States. Given this deference, the court would presume that if the
> extraditing country does not indicate that an offense specified in the request is excluded
> from the extradition grant, the extraditing country considers the offense to be a crime for
> which extradition is permissible. Because Campbell's indictment included the firearms
> offenses, the court infer[red] that Costa Rica found the . . . offenses to be extraditable
> crimes and refused to second guess that decision.

*Trabelski*, 845 F.3d at 1188 (internal quotation marks and citations omitted). The D.C. Circuit

concluded that "this deferential approach means that 'we will presume that if [Belgium] does not

indicate that an offense specified in the request is excluded from the extradition grant, [Belgium]

considers the offense to be a crime for which extradition is permissible.'" *Id.* at 1189 (quoting

*Campbell*, 300 F.3d at 209). Following that rationale, this Court finds that Defendant's claim that

his charges did not fit squarely within the Extradition Treaty could have been raised by officials

in Guatemala, who were made aware of the charges against Mr. Lorenzana-Cordon. But

Guatemala did not contest the extradition, and this Court will not second-guéss that decision.

Accordingly, Defendant's claim that his extradition was improper because it was not encompassed

within the terms of the Extradition Treaty is denied.

> b. Defendant Alleges Appellate Counsel was Ineffective for Failing to Raise a Violation of
> the Rule of Specialty

In his Section 2255 motion, Defendant argues that his conviction should be reversed

because his appellate counsel failed to raise on appeal a violation of the rule of specialty, grounded

in an argument that Guatemala only extradited Defendant to face charges on a conspiracy dating

from 1999 to 2003, while evidence post-dating 2003 was introduced at trial. The Court considered

and denied this argument in post-conviction proceedings. More specifically, the Court recognized

conflicting authority as to whether Defendant had standing to raise the doctrine of specialty

argument but indicated that it would consider the argument on the merits *See* Mem. Op. and

Order, ECF No. 931, at 13-14. The Court explained that the indictment "charged Defendants with conspiring with individuals associated with the Otto Herrera DTO and with 'other co-conspirators, both known and unknown' to the grand jury, from 1996 to 2009." *Id.* at 14.  Those were "the charges for which the government of Guatemala decided to grant extradition, and they were the charges for which Defendants faced trial." *Id.* at 14.  The Court noted further that documents such as affidavits in support of extradition mention Defendant's criminal conduct post-2003. *Id.* at 15.  The Court concluded that the "inclusion of conduct that occurred after 2003 in these documents is in line with the scope of the charges in the indictment for which Defendants were extradited and convicted, which exceeds the Defendants' involvement with the Otto Herrera DTO[,]" and the doctrine of specialty was not violated. *Id.*

Furthermore, the Court found that the "the doctrine of specialty governs prosecutions, not evidence," *Lopesierra-Gutierrez*, 708 F.3d at 206, and in fact, it has "nothing to do with the scope of proof admissible into evidence in the judicial forum of the requisitioning state," *United States v. Kember*, 685 F.2d 451, 458 (D.C. Cir. 1982) (internal quotation marks and citation omitted). Mem. Op and Order, ECF No. 931, at 15.  This Court concluded accordingly that "the use of evidence of conduct other than the charged conspiracy to prove the charged conspiracy – even if it had occurred – would not have constituted a violation of the doctrine of specialty." *Id.* at 15-16. The Court then considered and rejected Defendant's specialty argument yet again – in the context of its consideration of Defendant's Motion for a New Trial and Second Motion to Reconsider the Denial of his Revised Motion for a Judgment of Acquittal and New Trial – by reiterating its prior findings and noting that "Defendant ha[d] not raised any grounds for reconsidering this decision." Order, ECF No. 991, at 19-21.

The Government asserts, and this Court agrees, that "Defendant now attempts to re-argue an issue that this Court has twice decided on the merits, by repackaging it as 'ineffective assistance of counsel' for failure to raise the issue on appeal." Gov't Opp'n, ECF No. 1197, at 16. Furthermore, under the *Strickland* analysis, the Court finds that appellate counsel's failure to argue this issue on appeal – after it was twice denied by this Court – was not "professionally unreasonable." The D.C. Circuit has opined on this topic: "As our sister circuit has observed, '[b]ecause of this presumption and the reality that effective appellate advocacy often entails screening out weaker issues, the Sixth Amendment does not require that appellate counsel raise every colorable or non-frivolous issue on appeal.'" *Payne v. Stansberry*, 760 F.3d 10, 13-14 (D.C. Cir. 2014) (quoting *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) (citation omitted)).

Moreover, the Government argues that there was no prejudice to Defendant insofar as the D.C. Circuit (while not directly addressing specialty) found that "the conspiracy with which the Indictment charged the Defendant continued until at least [ ] 2008." Gov't. Opp'n, ECF No. 1197, at 17. "Coupled with the [appellate] Court's finding no showing of prejudice resulting from the lower court's refusal to give a multiple conspiracy instruction, it seems unlikely that an argument seeking to narrow the conspiracy from 1999 to 2003 would have prevailed, even if it had been raised." *Id.* at 17-18 (citation omitted). There is therefore no "reasonable probability that, but for [appellate counsel's failure to re-litigate the rule of specialty claim], the result of the proceeding would have been different." *Moore*, 75 F. Supp. 3d at 572 (citing *Strickland*, 466 U.S. at 694; *United States v. Dale*, 140 F.3d 1054, 1056 N.3 (D.C. Cir. 1998)). Accordingly, Defendant's claim of ineffective assistance of counsel – for failing to raise a rule of specialty argument – is denied.

4. Defendant Alleges that Appellate Counsel was Ineffective for Failing to Raise Violation of Fifth Amendment Due Process Rights

The Government accurately characterizes Defendant's final claim of ineffective assistance of counsel as a hybrid of the three claims addressed above, which have been denied by this Court herein. "Namely, [Defendant] argues that appellate counsel was ineffective for failing to raise the claim of a violation of his Due Process Rights based on the false statement of Drug Enforcement Administration ("DEA") Special Agent Stephen Fraga in the extradition affidavit, which resulted in a prosecution on an untimely indictment barred by the statute of limitations and in violation of the rule of specialty." Gov't Opp'n, ECF No. 1197, at 18 (referencing Def.'s Mot. at 13). There are several problems with Defendant's claim.

First, this issue regarding a "false statement" by Special Agent Fraga was raised previously, and this Court undertook to consider the merits of Defendant's arguments by "reviewing all of the citations referenced by Defendant," and in so doing, the Court "found no material inconsistencies that would have any effect on Defendant's sentencing or his entitlement to a new trial or acquittal." Order, ECF No. 991, at 3. More specifically, this Court explained that:

> The only aspects of the affidavits that were *potentially* contradicted by trial testimony and warrant any discussion by the Court were statement in the affidavits that Defendant and his co-conspirators, including Bryan Linares, met in Guatemala in "approximately" February 2002. *See* Def.'s Mot., Ex. 1 at ¶29; Def.'s First Mot., Ex. 3 at ¶34. Defendant contends that "the meeting described was impossible," Def.'s First Mot. at 2, because Linares testified at trial that he was arrested on May 22, 2003, and incarcerated for fifteen or sixteen months. *Id.* In other words, if Linares' testimony at trial is accepted, the meeting described in the affidavits either occurred at a different time, or Mr. Linares was not present at that meeting.

Order, ECF No. 991, at 3 (emphasis in original).

This Court indicated that "[b]y only purporting to *approximate* the date of the meeting, the affidavits account for the fact that the meeting could have occurred at a later time [and] Linares

21

[the attendee] was, after all, apparently released from prison only slightly later than February 2004." Order, ECF No. 991, at 4 (emphasis in original). This Court concluded that "even if the Court were to find that the date of the meeting was stated inaccurately in the affidavits, or that Linares was not actually at the meeting described, this minor mistake is not important to any legal or factual issue in this case." *Id.* Moreover, "[t]he fact that trial testimony was potentially inconsistent with extradition affidavits on the date of a meeting, or whether one of Defendant's particular co-conspirators was at that meeting, [was] simply immaterial." *Id.* at 5.

Second, the Government proffers accurately that "the extradition affidavit and trial record establish that the Defendant was conspiring with his brother and others long after the end of the Otto Herrera DTO in 2003 and well into time required to satisfy the statute of limitations." Gov't Opp'n, ECF No. 1197, at 19-20 (citations omitted). Third, the Court has already addressed and rejected both of Defendant's arguments based on the rule of specialty. Accordingly, the Court finds that appellate counsel's failure to raise this [Due Process] claim – stemming from purported inaccuracies in the extradition affidavits that were deemed to be of no real import – was not "professionally unreasonable" pursuant to *Strickland*, 466 U.S. at 688. "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004). Defendant's ineffective assistance of counsel claim based on failure to raise Due Process issues is denied.

### 5. Defendant's Claims of Prosecutorial Misconduct and False Imprisonment

The Government contends accurately that "Defendant's claims of prosecutorial misconduct and false imprisonment are both rooted in what the Defendant alleges was the

Government's intentional use of perjured statements in the Government's request for the Defendant's extradition from the Republic of Guatemala." Gov't Opp'n, ECF No. 1197, at 20 (referencing Def.'s Mot., ECF No. 1173, at 13-16). More specifically, Defendant alleges that in an affidavit included in the Government's request for Defendant's extradition, DEA Special Agent Stephen Fraga intentionally misrepresented the Defendant's meetings with co-conspirators. Def.'s Mot., ECF No. 1173, at 13-16. As previously explained, the meeting date indicated for one meeting could not have included one co-conspirator who was incarcerated, but that date was noted to be an approximation, and whether that co-conspirator attended the meeting was not dispositive as to the allegations which formed the basis of Defendant's extradition.

Moreover, the Government asserts that Defendant's arguments regarding prosecutorial misconduct and false imprisonment have been "procedurally defaulted" insofar as Section 2255 petitioners "are procedurally barred from collaterally raising constitutional claims that could have been, but were not, raised on direct appeal, unless the petitioner can demonstrate "cause" excusing the default and "actual prejudice" resulting from the alleged errors; or alternatively, the claim is based on ineffective assistance of counsel; or petitioner claims that he is "actually innocent." Gov't Opp'n, ECF No. 1197, at 20 (quoting *Frady*, 456 U.S. at 167). In this case, the factual basis of these claims was known at the time of Defendant's appeal (and in fact, before trial) but was raised for the first time in the instant Motion, and Defendant makes no showing of good cause for not raising the claims on appeal or that prejudice resulted from this claim, or that he is actually innocent. In his Reply, Defendant indicates his understanding that "a claim of prosecutorial misconduct can be brought under [Section] 2255, if it alleges actual innocence." Reply, ECF No. 1203, at 2 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (emphasis added by the

Court).  Immediately thereafter, Defendant acknowledges his "criminal activity" but qualifies such activity by stating that it "ended in 2003" and "was restricted to Guatemala only" as his "drug dealing never involve[d] the United States."  Reply, ECF No. 1203, at 3.    Defendant has not alleged actual innocence, and nor could he as this Court has already opined herein that the record in this case demonstrates Defendant's criminal conduct, which extended beyond 2003 and beyond conspiring with Otto Herrera.

Next, in his Reply, Defendant expands his argument to dispute the overall veracity of DEA Special Agent Fraga's affidavit insofar as Agent Fraga made statements that were attributable to confidential sources.  The Court notes that Defendant had the opportunity to challenge Agent Fraga's veracity during cross-examination.  Furthermore, as previously discussed, "[t]he only aspect[ ] of [Agent Fraga's] affidavit that [was] *potentially* contradicted by trial testimony and warrant[s] any discussion by the Court [was a] statement[ ] in the affidavit[ ] that Defendant and his co-conspirators, including Brian Linares, met in Guatemala in "approximately" February 2004."  Order, ECF No. 991, at 3-4 (internal citation omitted).  The Court has opined already that whether this meeting was held in February or included Mr. Linares was immaterial to any factual or legal issue in this case.  Moreover, even assuming *arguendo* that Defendant's arguments are not procedurally defaulted, for the reasons set forth in this Memorandum Opinion, Mr. Lorenzana-Cordon's claim based on the alleged false statement of DEA Special Agent Fraga about the timing of a meeting is without merit.  Accordingly, Defendant's claims on the grounds of alleged prosecutorial misconduct and false imprisonment are denied.

This Court finds that Defendant's Section 2255 motion is without merit, both regarding Defendant's claims of ineffective assistance of counsel and his claims of prosecutorial misconduct and false imprisonment. As such, Defendant's sentence and conviction remain unchanged. A separate Order accompanies this Memorandum Opinion.

DATED: 5/6/2025

COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE